William M. Russell, Respondent, v. Hannibal and St. Joseph Railroad Company, Appellant.

Kansas City Court of Appeals, May 23, 1887.

1. Railroads—Obligation to Fence Under Section 809, Revised Statutes—Exemption From.—Railroads are exempted from the obligation to fence, under section 809, Revised Statutes, where stock is killed on the grounds of a railroad at a depot, and it *is not necessary*, for the transaction of business, that the space shall be kept open therefor. But, where stock is killed on a railroad switch at a point where *it is necessary* to keep the road open in order to transact business, the company will be liable without proof of negligence. Where the switch extends along the main track for a considerable distance through an open prairie, it is just as necessary and practicable to have the road fenced, as any other part of the road.

2. Practice—Instructions—Issues.—Instructions covering the whole issue and supported by the evidence are properly given, and those *ignoring* any of the material issues are properly refused.

Appeal from Jackson Circuit Court, Hon. James H. Slover, Judge.

*Affirmed.*

The case and facts are stated in the opinion.

Crittenden, McDougal & Stiles, for the appellant.

I.   The side track and switches constituted a *part of the station grounds* at Harlem. It was the only place designated and used by the company and the public for receiving and discharging freight at that station, and, owing to its communication with or accessibility of approach from the county road, the most suitable and practicable one. The evidence *being without conflict* on this point, it was erroneous for the court

to hold that the company was liable for its failure to fence at that point. *The public convenience required* it to be kept open. The true rule, under statutes like that of Missouri and Iowa, is, " that railroads are required to be fenced when it is fit, proper and suitable in view of the public convenience to so enclose them, and that depot or station grounds, when the business of the road and the interests of the public so require, may be kept open and left uninclosed. It may have been entirely practicable for the company to have fenced its road, yet it may have been relieved of the duty out of regard to the interests of the public." *Latty v. Railroad,* 38 Iowa, 250 ; *Davis v. Railroad,* 26 Iowa, 550 ; *Smith v. Railroad,* 34 Iowa, 506 ; *Lloyd v. Railroad,* 49 Mo. 199. " A railroad company is not liable, without proof of negligence, for the death of animals killed by its cars at a point where it is necessary for the transaction of its business that the space about its tracks should be kept open, notwithstanding the road at that point is not fenced, and although that point is not in a town nor at a public crossing." *Robinson v. Railroad,* 21 Mo. App. 141.

II. The court erred in *refusing* defendant's first and second instructions. The facts stated in them and the conclusion asked, are such as that the finding should have been for the defendant, and the declarations are correct expressions of the law under the authorities cited. So, also, as to the fourth, which stated, from the evidence, that it was impracticable for a fence to have been maintained at that place.

G. F. BALLINGAL, and BOTSFORD & WILLIAMS, for the respondent.

I. *The uncontradicted evidence* in the case showed that the mare of the respondent came upon the track of appellant's road, and was injured at a point on appellant's track nearly a mile east of the limits of the town

of Harlem, *not within the limits of any station* of the appellant's road, and where the track of appellant's road  passed through open and unenclosed lands left unfenced by the appellant.. The appellant's first and second declarations of law were properly refused and respondent's declaration of law properly given. The uncontradicted evidence showed that the switch of appellant, where the same passed along the unenclosed and unfenced lands where respondent's mare was injured, was not within the limits of appellant's station at Harlem, and that respondent's mare came upon appellant's track about one hundred yards east of where she was injured, where the said track passes in *the open country along and through adjoining unenclosed lands not fenced by appellant*. Appellant's first and second declarations of law were, therefore, properly refused.

II. There was *no evidence* to show that it was necessary for the *transaction of business with the public*, and for its convenience in the receipt and discharge of freight, that the place where respondent's mare came upon appellant's track *should be left open* and unfenced. Appellant's second declaration of law was, therefore, properly refused.

III. The facts that switches of appellant railroad company pass through open and unenclosed lands near a station of the company, but not within the limits of the station, and may be or are used for the loading and unloading of freight from cars standing thereon, afford no excuse for appellant not fencing its said road when the same passes through said open and unenclosed lands where respondent's mare came upon appellant's track, and where it was injured by the cars operated on appellant's road. *Morris v. Railroad*, 58 Mo. 78 ; *Robinson v. Railroad*, 21 Mo. App. 141.

IV. The fact that the Wabash road had its road and side track alongside of the main track of appellant's road does not relieve appellant of the statutory duty of erecting and maintaining fences. *Rutledge v. Railroad*, 78 Mo. 286 ; *Roselle v. Railroad*, 79 Mo. 349.

V. The case having been tried by the court without a jury, and the finding from the evidence being, manifestly, for the right party, the judgment will be affirmed. *Russell v. Railroad,* 83 Mo. 507; *Jantzen v. Railroad,* 83 Mo. 171.

VI. There having been *no issue made by the pleadings,* that appellant was relieved of its statutory duty to fence its track where the same passes through the unenclosed lands where respondent's mare was injured, the *declarations of law asked by appellant* and refused by the court were *foreign to the issues* raised by the pleadings, and were properly refused. If appellant claimed *exemption* from the statutory duty of erecting and maintaining lawful fences on the sides of its road where respondent's mare came on the track, where the same passes through, along or adjoining unenclosed lands, not within the limits of any town or station on defendant's road, and not the crossing of any highway, and a state of facts existed justifying such exemption, then appellant should have *pleaded the same* affirmatively in its answer. Having failed to do so by a general denial, appellant cannot obtain the *benefit of such exemption,* by asking declarations of law based thereon. *Meyers v. Union Trust Co.,* 82 Mo. 237, and cases cited; *Benson v. Railroad,* 78 Mo. 513; *Busby v. Railroad,* 81 Mo. 53; *Mosman v. Bender,* 80 Mo. 579; *Gailbraith v. City of Moberly,* 80 Mo. 484; *Wade v. Hardy,* 75 Mo. 394; *Price v. Railroad,* 72 Mo. 414; *Northrup v. Ins. Co.,* 47 Mo. 435; *Hamilton v. Railroad,* 87 Mo. 89; *Waldhier v. Railroad,* 71 Mo. 514; *Eden v. Railroad,* 72 Mo. 212; *Bank v. Murdock,* 62 Mo. 70.

PHILIPS, P. J.—This case has been in the supreme court, and is reported in 83 Mo. 507. It is for the recovery of damages for the killing of plaintiff's horse by defendant's cars, near Harlem, in Clay county. The supreme court reversed the case and remanded it. On its

return to the circuit court the plaintiff filed an amended
petition, which contained three counts, as did the original
petition, covering substantially the same facts, rectifying
the defects in the statement of the second count, on
which the former recovery was had, and for which
defects the cause was reversed in the supreme court.
On re-trial the plaintiff recovered judgment on the third
count of the petition ; to reverse which this appeal is
prosecuted. It is distinctly stated in the opinion de-
livered by the supreme court that, on the plaintiff's own
motion, the jury returned, on the first trial, a verdict for
the defendant on the first and third counts, and the
appeal was prosecuted by the defendant from the judg-
ment on the second count. And yet on this second trial
the plaintiff was suffered to recover judgment on the
third count, on which cause of action judgment on the
former trial had gone for the defendant, which stood
unreversed. But as the defendant did not see fit to raise
this question, at the trial, either by plea, or putting in
evidence the former recovery, nor, indeed, has presented
such matter on this appeal, the question is not before
us on this record for consideration. The appellant seems
rather to prefer to press the single question as to the
obligation of the railroad company to erect and main-
tain a fence on the sides of its track where the injury oc-
curred. Its duty in this regard has been thrice passed
upon by the supreme court. But it seems about to prove
the judicial *Banquo* of our courts. It will not down.
This question was involved in the case of *Rozelle v.
Railroad* (79 Mo. 349) ; and in *Jantzen v. Railroad*
(83 Mo. 171) ; and in both instances was determined
against the companies. And when the present action
was remanded by the court, it was observed by the
writer of the present opinion, that: "We do not
perceive anything in the facts developed in the trial of
this cause to exempt the defendant from its liability, for
not erecting and maintaining a fence at the point in
question. That there is any such public use of the

road at that point as to prevent the company from building a fence is the merest pretense." We have some faint hope of putting a *quietus* on this thrice-vexed question, at least, so far as this jurisdiction is concerned, which is our apology for this opinion.

Harlem is a town almost without streets, houses, business or people. There have been people, houses, and some municipal pretensions about it ; but, owing to the natural, perverse inclination of the waters of the Missouri river occupying, without leave and little warning, its thoroughfares as a current, and under the absorbing commercial and trade influences of Kansas City, on the opposite bank of the river, there has, for years, been little of it to call a town.

The railroad station, or depot, is located but a short distance from the base of the incline where the railroad track begins the ascent of the trestle works leading on to the bridge spanning the river. From this depot, going east, the Hannibal & St. Joseph Railroad and the Wabash & Pacific Railroad, run parallel, with only sufficient space between them to admit trains to pass with safety. The Hannibal road is on the north and the Wabash on the south side. At the distance of about two hundred yards east of the depot both of these roads have switches beginning and running parallel with the main tracks. That on the north side extends east from its initial point about six hundred yards, and that on the south side about four hundred yards, where they connect with their respective main tracks. There do not appear to be any streets at these points. A county road, running from the river north, runs for some distance alongside of the right of way, on the south side of the tracks, and crosses the tracks, at a point perhaps just east of the terminus of the side switch on the south side, and between that and the point where the switch on the Hannibal side connects with the main track. The roads at these points, the entire length of the side track, run through uninclosed lands. There are no cattle guards

at the public crossing ; and no fence on either side of the tracks.

The plaintiff's evidence, without any material contradiction, tended to show that his horse entered upon the defendant's railroad track at a point west of, and not very far from, the public road crossing ; where he was struck by an engine, and pushed some distance before he was thrown from the track. The defendant's evidence tended to show that the horse was struck at a point somewhat further towards the depot ; but, as the defendant's own evidence tended to show that the point of collision was nearer the east end of the switch than the west, the discrepancy between these witnesses, in this matter, may be considered as decided in defendant's favor, for the purposes of this decision.

Defendant's evidence was directed mainly to developing the fact that the injury occurred within the switch limits, and the further fact that these switches were used for loading and unloading freights. As to the switch on the south side, there can not be any pretense that it was used for any other purpose than for the passing of trains, and as a place for empty cars to stand, for the lack of such facilities on the Kansas City side of the river. The only loading done there was of sand for bedding live stock in the stock cars. This had no connection with the business of the Harlem station.

The very most that can be conceded to the defendant, in respect of the switch on its side of the track, is, that, occasionally, freight had been unloaded there, at some time in the past, into wagons driven alongside of the car. No unprejudiced mind, however, can escape the conclusion that the real purpose and use of this long switch was for standing empty cars on, for the Kansas City traffic, and for the passage of trains coming from, and going to, Kansas City. That a switch six hundred yards long was used as an appurtenant to and for the necessary business of Harlem station is too preposterous for consideration.

The statute (section 809) declares that: "Every railroad corporation, running or operating any railroad in this state, shall erect and maintain lawful fences on the sides of its road, where the same passes through, along, or adjoining inclosed or cultivated fields, or uninclosed lands; and, also, to construct and maintain cattle guards where fences are required, sufficient to prevent horses, etc., from getting on the railroad."

The supreme court has so construed this section, as in the case of *Morris v. Railroad* (58 Mo. 78), as to exempt the railroads from the obligation to so fence, "where stock is killed on the grounds of a railroad at a depot, and it is not necessary, for the transaction of business, that the space shall be kept open therefor." "But, where stock is killed on a railroad switch, at a point where it is necessary to keep the road open in order to transact business, the company will be liable without proof of negligence." The court further say: "Where the switch extends along the main track for a considerable distance through an open prairie, it is just as necessary and practicable to have the road fenced as upon any other part of the road, and we are not inclined to extend the rule laid down in *Lloyd v. Railroad*, further than the facts of that case will justify, and that is, that the company is not required to fence such grounds as are *necessary* to remain open for the use of the public and the necessary transaction of business *at the depot or station*." From which it is manifest that such switches must be at or near the depot, and the space to be kept open shall be no more than is necessary for the transaction of business at that depot.

The switches in the case at bar were not at the depot. They began two hundred yards from it, and extended a quarter of a mile further, through uninclosed lands. And as such, they come within the very language of the supreme court, that it is the duty of the roads to fence them. Even had there been any business necessity for switches, so far as the trade and traffic of Har-

lem depot was concerned, there is nothing to show why such switches could not have been built on the two hundred yards' space next to the depot. And most certainly there was not the shadow of a pretense that such business required the extension of these switches over the distance of half a mile for the unloading of freights, which was so seldom that defendant's own agents were most indefinite as to when, or how often, they had seen any freight unloaded on this switch. With just as much propriety, in law, might it be said that if these cars had occasionally unloaded freight for Kansas City at these switches, because of the crowded or unfavorable condition and location of the city depot, the switches would have so pertained to its business as to exempt the roads from their obligation to fence; or, that if this switch had been a mile or more long, it would have been within the rule of switch limits for its entire length, regardless of the necessity arising from an accommodation of the business done at the station.

On this state of the evidence the court declared the law as follows:

"If the court, sitting as a jury, find, from the evidence, that the plaintiff was the owner of the bay mare mentioned in his petition; that, on or about the seventh day of August, 1880, said mare was injured by the cars, locomotives, or other carriages used and operated on defendant's said railroad by the Chicago, Rock Island and Pacific Railway Company, under authority of defendant and under lease of said railroad track by said Chicago, Rock Island and Pacific Railway Company from defendant; that said injury occurred in the county of Clay, and state of Missouri; that, at the place where said animal got upon defendant's said track, and was so injured, said railroad track passed along, or through uninclosed lands; that, at said place, said railroad track was not fenced, and said places were not within the limits of any incorporated town or city, or of any station of defendant, and were not the crossing of any public highway,

then, the court, sitting as a jury, will find the issues for the plaintiff. And, if the court further finds that said animal was so injured as to be worthless, then, the court, sitting as a jury, will assess the actual value of said animal under the evidence, and on such finding, plaintiff will be entitled to judgment for double the amount of the actual damage so sustained by plaintiff."

This covered the whole issue, and was supported by the evidence.

The first instruction asked by the defendant was properly refused, because it wholly ignored the issue as to the necessity of the switch, at the point where the injury occurred, for the transaction of business at that station. So of the second instruction.

The other instruction refused by the court was also properly rejected, for the reason that the obligation of the defendant to fence on the south side of the Wabash track was expressly decided by the supreme court in *Rozelle v. Railroad* (79 Mo. 359).

On the record, the verdict and judgment were for the right party; and, therefore, the judgment is affirmed. All concur.