EDWARD E. WRIGHT, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 30, 1894.

Railroads: OBLIGATION TO FENCE AT SWITCHES. When a railroad switch is crossed by a public road, the railway company is prevented thereby from fencing the entire switch, and therefore is not bound to fence any portion of it under section 2611 of the Revised Statutes. (BOND, J. *dissents.*)

*Appeal from the Clark Circuit Court.*—HON. BEN E. TURNER, Judge.

REVERSED.

*Gardiner Lathrop, T. L. Montgomery* and *S. W. Moore* for appellant.

Where, as here, the undisputed evidence shows that to inclose the right of way would necessitate the

building of cattle guards and wing fences at a point where it would endanger the lives of the employees in the performance of their duties, and also interfere with the same, plaintiff ought not to recover. *Pearson v. Railroad*, 33 Mo. App. 543; *Jennings v. Railroad*, 37 Mo. App. 651; *Kneadle v. Railroad*, 19 Am. & Eng. R. R. Cases, 568; *Lloyd v. Railroad*, 49 Mo. 199; *Allen v. Railroad*, 5 Am. & Eng. R. R. Cases, 620; *Swearingen v. Railroad*, 64 Mo. 73; *Lewis v. Railroad*, 59 Mo. 495; *Railroad v. Willis*, 93 Ind. 507; *Snow v. Railroad*, 8 Allen, 441.

*O. S. Callihan* for respondent.

The question of fact in this case as to whether or not, from the nature and situation of the place, and the use made of that part of the railroad by the defendant and the public, it should have been fenced, was properly submitted to the jury. *Straub v. Eddy*, 47 Mo. App. 189; *Russell v. Railroad*, 26 Mo. App. 368; *Johnson v. Railroad*, 27 Mo. App. 379; *Russell v. Railroad*, 83 Mo. 507.

BIGGS, J.—This is an action under the double damage act for the killing of a cow and heifer, belonging the the plaintiff, by defendants engine and cars. The evidence tended to prove the following state of facts:

The defendant had a side track at a point called Cama on the line of its road, where passenger trains, when flagged, stopped to receive and discharge passengers, but which was chiefly used as a passing point for trains. It had no station house and kept no agent at that place. From twenty to forty trains pass Cama daily, and it was a daily occurrence for some of these to meet each other at that point. It not infrequently

happened that the number of trains meeting there would be greater than the side track could accomodate, and as a result the trains would be obliged to "saw" by each other. In doing so it would sometimes be necessary to uncouple portions of a train. It also appeared that a public road crossed the railroad and switch about midway between the two ends of the latter; that trains, while waiting here, frequently had to uncouple at the crossing in order to let teams pass, and the rules of the company required the employees to examine the train, its trucks, etc., whenever the train stopped. At this place the railroad lay through uninclosed lands, and was unfenced for the entire length of the switch and for a short distance beyond in each direction. The switch was about a half a mile long, having a capacity of fifty cars. About the second day of September, 1892, the cow and heifer of plaintiff were seen on the right of way, about twenty-five yards west of the point where the public road crossed the tracks. There was no evidence outside of this fact as to where they got on the right of way. Shortly after they were seen there, one of defendant's passenger trains went through Cama, and within a very short time thereafter the cow and heifer were found dead by the side of the track. The plaintiff's theory was that the grounds at Cama should have been fenced. The defendant contended that they should not and could not have been fenced. On this point the direct evidence was, that, in order to inclose the grounds at Cama, it would be necessary to build wing fences and to put cattle guards across both tracks on each side of the public road; that these cattle guards and wing fences would be dangerous to the lives and limbs of the employees in getting on and off cars while inspecting their trains, when standing there, and in

coupling and uncoupling cars to make way for passing teams, and in switching and "sawing" by other trains; that the duties of the employees at Cama required them to run alongside of their trains, and climb on and off cars upon this switch; that cattle guards were regarded by railroad men as very dangerous, and that they were especially so to new and inexperienced men, and at night, and in the haste and hurry in which railroad employees necessarily worked; also that the cattle guards would be at the very place where the trains would have to be uncoupled to allow teams to pass, and, in recoupling, the men might have to run over them or climb the fences, with the risk of falling into the pit of the cattle guard, or stumbling and being run over by the train; and also that the fences would interfere with the giving of signals.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendant asked the court to direct a nonsuit. This the court refused to do. The jury returned a verdict for $100, which amount the court doubled. The defendant has appealed.

We are of the opinion that the plaintiff ought to have been nonsuited. The case was submitted upon the assumption that the defendant was compelled to fence its switch at Cama station, unless it was necessary for the use of the public and for the transaction of defendant's business at that point that it should remain unfenced, or unless the fencing of the switch would necessarily endanger the lives of the defendant's employees in the discharge of their duties at that point. This, we think, was an erroneous theory. If Cama be treated as a switching point merely, which is the most favorable view possible in support of the judgment, we know of no case which has so construed section 2611 of the Revised Statutes of 1889,

known as the double liability act, as to compel the defendant to fence the switch in controversy.

In the case of *Chouteau v. Railroad* (28 Mo. App. 556), it appeared that the side tracks or switches where the animal was killed extended through uninclosed lands. The trial court instructed the jury that, if the tracks were not within the limits of a town, and were not used in connection with a depot, but were used for standing cars and switching cars, it was incumbent on the defendant to fence them. This direction was approved by the appellate court.

So, in the case of *Russell v. Railroad* (26 Mo. App. 368), the injury occurred on a switch which extended through uninclosed lands. It was located some distance from a depot, and it was not used in connection with the business of the road which was transacted at a depot. The court held that the side track ought to have been fenced. After reviewing the cases which held that section 2611, *supra*, does not require railroad companies to fence their depot grounds, which include reasonable spaces for switches, the court concluded that the exemption as to switches could only apply where the switches were at, or near, a depot, and were used in connection therewith.

In the case of *Bean v. Railroad* (20 Mo. App. 641), the animals were killed at a switch which was located outside of the town limits, and was near, but not immediately adjoining, the defendant's depot at Irondale. The jury was instructed that the law did not require the defendant to fence its depot grounds, and that, if the cow was killed within such limits, there could be no recovery, but that it was for the jury to say whether the switch in question was within such limits, and that, in determining that question, the jury should take into consideration the nature and situation of the switch and the use made of it by the

defendant and the public in connection with the business' of the company at that station. This court approved the instructions, and held that under the peculiar facts of the case the question as to what constituted the defendant's depot grounds at that particular station was a question of fact.

In the case of *Pearson v. Railroad* (33 Mo. App. 543), the animal came upon the track at a point outside of the switch limits, between the apex of the switch and a cattle guard on the road, distant about one hundred and twenty feet from the end of the switch. The court held that under section 2611 that portion of the road between the end of the switch and the cattle guard ought to have been fenced, unless it was necessary to the proper and safe conduct of defendant's business at the station to leave it open.

In the case of *Jennings v. Railroad* (37 Mo. App. 651), the evidence tended to show that the road was fenced to within twenty-eight feet of the western limits of the town of Lawson; that the depot was located six or seven hundred feet east of the western limits of the town; that the switch extended west from the depot to within one hundred and forty feet of a cattle guard, where the railroad fence stopped; that the space from the apex of the switch to the cattle guard was unfenced, and that the animal entered on the twenty-eight feet between the cattle guard and the town limits. As to the duty of the company to fence the twenty-eight feet of its right of way lying outside of the town limits, the ruling was the same as in the Pearson case.

So this court held in the case of *Brandenburg v. Railroad* (44 Mo. App. 224). There the defendant's road extended north and south along the eastern limits of the town of Butterfield. To the east of the right of way the lands were uninclosed. The evidence

tended to prove that the animal came upon the track seventy or eighty yards south of the southern end of the switch, where the defendant had failed to erect fences. We held that the defendant was liable for double damages under section 2611, unless it was necessary to leave the space where the mule came upon the track unfenced, in order to properly and safely transact the business of the company at that station, and under the evidence the question was one of fact for the jury.

The foregoing cases are easily distinguishable from the case at bar. In the *Chouteau* and *Russell cases*, the switches extended through uninclosed lands, and they were not within the limits of a town. They were not used in connection with depots, *nor were they intersected by public roads or streets.* The purport of the decisions in these cases is, that if a railroad company constructs a side track for switching purposes only and at a point where it is compelled to fence its track, but fails to do so, then it is liable in double damages for stock killed at that point. In the *Bean case* the switch extended through uninclosed lands, and it was not crossed by a *public highway or public street.* It was held that the defendant was compelled to fence the switch, unless it was a part of the depot grounds. In the other cases the accidents occurred near, but outside of, the switch limits, and outside of the limits of a town, and not at a *public crossing.* It was held that such portions of a railroad must be fenced, unless the open space is necessary for the transaction of the business of the road at the station.

In the case at bar the switch was crossed midway by a public road. This prevented the defendant from fencing the *entire* switch, and this, in our opinion, relieved the defendant from the obligation to fence any portion of it. The rulings of the Kansas City

court of appeals in the *Chouteau* and *Russell cases* rested chiefly, as we understand the decisions, on the fact that the switches there in controversy were constructed at points where the defendants were bound to fence their roads.

The case of *Morris v. Railroad* (58 Mo. 78), was an action for single damages under section 4428 of the Revised Statutes of 1889, then known as the fifth section of the damage act. It is no authority in the case at hand.

Our conclusion is, that the defendant's instruction for nonsuit ought to have been given. The judgment is reversed. Judge ROMBAUER concurs. Judge BOND is of the opinion that the case was tried upon the correct theory. He, therefore, dissents.