ALFRED SCHAFER, Respondent, v. ST. LOUIS & HANNIBAL RAILROAD COMPANY, Appellant.

| 65 | 201 |
| s76 | 132 |

St. Louis Court of Appeals, February 4, 1896.

Railroads: KILLING STOCK. Section 4428 of the Revised Statutes, which provides for the liability of a railroad company for the killing of stock on its road by its cars or engines without proof of negligence, unless the accident occurs where the road is inclosed by a lawful fence or at the crossing of a public highway, does not apply to the killing of stock at a switching point, if a perfect inclosure at such point, including necessary cattle guards, would greatly endanger the lives of the railway company's employees while engaged there in switching cars.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

CERTIFIED TO SUPREME COURT.

*G. Pitman Smith, C. R. Ball, J. D. Hostetter* and *J. B. Jones* for appellant.

*J. D. Barnett & O. H. Avery* for respondent.

BIGGS, J.—The defendant's road extends north and south along the line of the eastern limits of the town of Moscow. Two of plaintiff's horses came upon the railroad track at a point about one hundred and three feet south of the southern limits of the town, and one hundred and thirteen feet south of the southern

apex of the railroad switch at Moscow station. Upon the approach of a train from the north, the horses ran south along the track a distance of about fifty yards to a bridge, where they were run over and killed by the train. The plaintiff sues in this action, under section 4428 of the Revised Statutes of 1889, to recover their value. The allegation is that the injury occurred "where there was no lawful fence inclosing said railroad track, and at a place where said defendant could have inclosed its railroad track with a fence had it so desired, and that it occurred at a place on said railroad track other than the crossing of a public highway and not within the limits of any incorporated city or town." The defendant admitted the killing of the horses, but denied liability upon the ground, that the place where the animals came upon the track was so near to the southern apex of the switch, that the road could not be fenced there without greatly endangering the lives of the trainmen while engaged in coupling and uncoupling cars. Under the instructions of the court the jury returned a verdict for plaintiff for $225, from which the defendant has prosecuted this appeal.

Section 4428, *supra*, under which the suit is brought, reads: "When any animal or animals shall be killed or injured by the cars, locomotive, or other carriages used on any railroad in this state, the owner of such animal or animals may recover the value thereof, in an action against the company or corporation running such railroad, without any proof of negligence, unskillfulness or misconduct, on the part of the officers, servants or agents of such company; but this section shall not apply to any accident occurring on any portion of such road that may be inclosed by a lawful fence, or in the crossing of any public highway." It has been repeatedly decided that this section

imposes no obligation to fence, but was intended as an incentive to railroad companies to fence their roads where they were not absolutely required to build fences, when it could be done without detriment to the public or without interference with the safe and proper conduct of their business. The only exception made in the section is where the railroad passes over a public highway, but other exceptions have been established by construction. Thus, it has been held that fences can not be built through the limits of a town or city through which a railroad is constructed, if that portion is laid off into streets; nor can depot grounds be inclosed, for that presumably would interfere with those having business with the company, and also with the proper and safe conduct of the business at the station. The space needed for depot purposes depends upon the facts in each particular case.

The defendant here concedes that the portion of the road where the horses came upon the track, and which was unfenced, could not be used for the purpose of loading or unloading freight, and that its inclosure would in no way interfere with the public, and that the road could likewise have been fenced without detriment to the public from the southern apex of the switch to a public highway which crossed the main and side tracks of the railroad a short distance south of the depot. But its contention is, and counsel insist that the evidence conclusively shows, that the road could not have been fenced between the bridge and the switch or the highway mentioned without greatly endangering the lives of its employees in placing or removing cars on or from the switch, and that for this reason the circuit court committed error in refusing to instruct the jury to return a verdict for the defendant.

The argument in support of this, however, is

based on the assumption that to construct fences between the bridge and the switch, or the bridge and the highway, a cattle guard would have to be constructed. That a cattle guard at any place between the points mentioned would have proved exceedingly dangerous to trainmen in coupling and uncoupling cars, is perfectly obvious, especially as that portion of the track south of the apex of the switch is located on a high and narrow embankment. The evidence shows without contradiction that there was considerable shipping from Moscow, and justifies the statement that that portion of the road was used constantly in putting empty cars on the switch and in taking loaded cars out. There is some evidence, though it is of a negative character, that the most of the switching was done at the north end of the switch; but the evidence of the trainmen and the depot agent was that the southern end of the switch was mostly used. In support of this the evidence is undisputed that the great bulk of the shipments went south to St. Louis, which of necessity would require the switching to be done at the southern end.

But was the defendant compelled to build a cattle guard in connection with the fence? The words "inclosed by a lawful fence" are used in the statute. The defendant assumes that of necessity cattle guards are included, as the words of the statute imply a perfect inclosure. This seems to us to be indisputable. An inclosure as applied to the ordinary ownership of land has been held by this court to be a complete inclosure by a fence of the required materials and height. *Stovall v. Emerson,* 20 Mo. App. 322. Therefore, the construction merely of fences along the sides of the railroad from the bridge to the apex of the switch, or from the bridge to the highway, would not have met the requirements of the statute.

As it unquestionably would have been dangerous to the trainmen to build cattle guards either between the switch and the bridge, or at the highway across the main and side tracks, we must hold that the circuit court committed error in refusing the defendant's instruction for nonsuit, and that, therefore, the judgment must be reversed. But our conclusion is seemingly opposed to the decision of the supreme court in the case of *Morris v. Railroad*, 58 Mo. 78. That case, like this, was an action for single damages, and the evidence tended to prove that the animal came upon the track near the depot and within the switch limits. Judge VORIES, speaking for the court, said: "There is no reason why defendant should not fence its road along each side of the road where it has a switch, as well as at other places. Where a switch extends along the main track for a considerable distance through an open prairie, it is just as necessary and practicable to have the road fenced as upon any other part of the road, and we are not inclined to extend the rule laid down in the case of *Lloyd v. Railroad*, before referred to, further than the facts of that case will justify, and that is, that the company is not required to fence such grounds as are *necessary* to remain open for the use of the public and the necessary transaction of business at the depot or station." Now, if we are right as to the necessity of a complete inclosure, it is evident that Judge VORIES, when he wrote the foregoing opinion, did not have in mind the danger to trainmen which would inevitably result from cattle guards across the main and side tracks. But if that question was considered, then the supreme court must have been of the opinion that a fence did not mean a complete inclosure. As we deem the question an important one, and as we are not fully satisfied as to the meaning of the decision in

the *Morris* case, we deem it expedient to certify this case to the supreme court, which is accordingly done. All the judges concur.