ALFRED SCHAFER, Respondent, v. ST. LOUIS AND HANNIBAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, June 21, 1898.

Jurisdiction: SUPREME COURT. When the supreme court declines to take jurisdiction of a case certified to the supreme court by this court naught remains for this court to do but follow the opinion cited and approved by the supreme court.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

HOSTETTER & JONES for appellant.

NORTON & AVERY and J. D. BARNETT for respondent.

BLAND, P. J.—At the February term, 1896, of this court an opinion written by Judge BIGGS was delivered in this cause criticising the opinion of the supreme court in the case of Morris v. R'y, 58 Mo. 78. For an advisory construction of the opinion of the Morris case, this court certified the case to the supreme court. At the April term, 1898, of the supreme court

an opinion was delivered and the cause was sent back to this court. In its opinion the supreme court declined to take jurisdiction of the cause, holding that the constitution confers no jurisdiction on it to advise this court of the correct interpretation of supreme court opinions, but took occasion to inform this court that the Morris case had been cited and approved by the supreme court in numerous decisions for nearly a quarter of a century and as late as 1893 in the case of R'y v. Clark, 121 Mo. 169, followed in Cox v. R'y, 128 Mo. 362.

In the light of this *"information"* from the supreme court naught remains for this court to do but to overrule its former opinion reported in 65 Mo. App. 201, and affirm the judgment of the lower court, which is accordingly done. Judge BOND concurs; Judge BIGGS absent.

### DISSENTING OPINION BY JUDGE BIGGS.

The opinion of the supreme court in this case decides nothing except that it acquired no jurisdiction of the cause by reason of the attempted certification of it by us. After referring to the decision of the supreme court, Judge BLAND says, "in the light of this *information* from the supreme court naught remains for this court to do but to overrule its former opinion reported in 65 Mo. App. 201, and affirm the judgment of the lower court." If the decision contains any "information" as to how this cause ought to be decided, I have been unable to find it. It states that the case of Morris v. R. R., 58 Mo. 78, has been cited and followed by the appellate courts of the state for a quarter of a century. This is certainly no "information" to the average Missouri lawyer. The only matter decided in the Morris case is that railroad companies were liable,

without proof of actual negligence, for injuries result-
ing from failure to fence their railroad tracks within or
near the switch limits, *provided the fence when con-
structed would not endanger the lives of trainmen in
switching cars.*

Our original opinion in this case recognized that
rule, but we were doubtful whether we had properly
applied it.   The words of the statute are "inclosed by
a lawful fence."   We held in the Stovall case, 20 Mo.
App. 322, that an inclosure meant a "perfect or com-
plete inclosure."   Under the facts in the Morris case
the question as to whether a perfect inclosure was
meant, was not a practical one, and therefore Judge
VORIES in writing the opinion did not refer to the
question.   In the case at bar the determination of the
appeal depends entirely upon it.   If the law contem-
plates a complete inclosure (which would require the
construction of a cattle guard near the apex of the
switch), there can be no question that this would,
under the circumstances, render the switching of cars
at the station extremely hazardous.   On the other
hand, if fences along the sides of the track only are
contemplated, this would not necessarily be dangerous
to trainmen.   We conclude that the proper interpre-
tation of the statute required complete inclosures, and
we therefore reversed the judgment.   In determining
the question we were troubled more by what Judge
VORIES did not say in the Morris case than by what he
did say.   We construed the statute as best we could,
but fearing that the profession understood the Morris
case as deciding differently, we concluded that we would
best discharge our constitutional duty by certifying
the case.   Our only desire was to get an unequivocal
and authoritative ruling on a very important question.
In this we signally failed.   Hence I am at a loss to

know where my associates get "the information" that the judgment in this case should be affirmed.

If they are of the opinion that the statute does not contemplate a perfect inclosure, then a judgment of affirmance would necessarily follow, for the reason that the building of fences along the sides of the road would not necessarily be dangerous to trainmen. But if the other construction is to be adopted (which I still adhere to), then I submit that the physical facts conclusively show that to build a cattle guard at or near the southern apex of the switch in question would necessarily endanger the lives of brakemen in making up trains.

I dissent upon the further ground that we have no jurisdiction to enter another and different judgment from that rendered by us on 'the fourth day of February, 1896. That judgment was final and is unreversed and unaffected by any action of this court or of the supreme court. I agree that if the case had been properly certified our judgment would in effect have been vacated. But the supreme court decided (as it lawfully might do in determining its own jurisdiction) that the order of certification entered by us was void, hence the void order of certification could in no manner affect the judgment rendered by us. That judgment became final after the term at which it was rendered.