SMITH, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, March 7, 1905.**

1. **RAILROADS: Fences: Single Damages.** Where animals are killed by an engine or cars of a railroad company at a point where the company is under statutory obligation to maintain fences along its right of way, but fails to do so, a recovery for single damages under section 2867, Revised Statutes of 1899 is as permissible as a recovery under the double damage statute.

2. ———: ———: **Jury Question.** It is a question for the jury whether portions of a railroad track may be left unfenced for the convenience of the public in transacting business or for the safety of the operatives of the train, when the part of the track about which the question arises is at or near a station.

3. ———: ———: **Uninclosed Lands.** If the place is not at a crossing, highway, street or station, but where the surrounding country consists of uninclosed land, the statute is obligatory that the railroad company shall fence its track.

4. ———: ———: ———. The rule obliging a railroad company to fence along uninclosed lands applied where there was a mill partly upon the right of way and a switch used only in connection with the mill, where no passengers were received or discharged and where freight trains only stopped to take up and set out cars from the mill switch, and where the nearest crossing was some distance from the apex of the switch.

Appeal from Ripley Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*James Orchard* for appellant.

The undisputed evidence is that this was at a switch where the public transacted business with the railroad company.; that it would have inconvenienced the railroad company and also the public to have fenced the road at this point, and it would have also endangered the lives of employees of the railroad company to have fenced the road at this point. Wherefore, appellant contends that its demurrer to the testimony should have been sustained. Morris v. Railway, 58 Mo. 78; Swearingen v. Railroad, 64 Mo. 73; Russell v. Railroad, 83 Mo. 507; Robinson v. Railroad, 64 Mo. 412; Lloyd v. Railroad, 49 Mo. 199; Grant v. Railroad, 56 Mo. App. 65; Vanderworker v. Railroad, 51 Mo. App. 156; Crenshaw v. Railway, 54 Mo. App. 166.

*Thomas F. Lane* for respondent.

(1) If the same facts will create a common-law liability, and also a right to recover a penalty given by statute, each cause of action must be stated in a separate count. Scott v. Robards, 67 Mo. 289. (2) A common-law action for negligence cannot be joined in the same count with the one for statutory negligence. Kendrick v. Railroad 81 Mo. 521; Harris v. Railway, 51 Mo. App. 125. (3) The same cause of action may be stated in different ways in different counts. Brinkman v. Stunter, 73 Mo. 172; Gas Light Co. v. St. Louis, 86 Mo. 495; Straub v. Eddy, 47 Mo. App. 189; Morrison v. Herrington, 120 Mo. 665, 25 S. W. 568; Mahoney v. Ins. Co., 44 Mo. App. 426. The question as to whether the railroad company might have fenced its track where the injury happened, is a question of fact for the jury to pass on. Morris v. Railroad, 58 Mo. 82; Bean v. Railway, 20 Mo. App. 643; Cox v. Railway, 128 Mo. 371, 31 S. W. 3; Hutchinson v. Realty Co., 88 Mo. App. 520. In the case of Crenshaw v. Railway, 54 Mo. App. 235-6, the court

said: A railroad company is not required to fence such grounds as are necessary to remain open for the use of the public and the necessary transaction of business at the depot or station. Citing Morris v. Railroad and Bean v. Railroad, supra. Where exemption from liability is claimed upon this ground, the burden of proving the necessity for leaving its tracks unfenced and unguarded is cast upon the railroad company, and the issue on this point, being a mixed question of law and fact, must be submitted in all cases of conflicting evidence to the jury. Hamilton v. Railroad, 87 Mo. 85; Jennings v. Railroad, 37 Mo. App. 651; Pearson v. Railroad, 33 Mo. App. 543; Brandenburg v. Railroad, 44 Mo. App. 228.

GOODE, J.—A mule belonging to the plaintiff was killed by a collision with one of defendant's locomotives. This action is to recover for the loss. The complaint contains three paragraphs, the first one founding the cause of action on the double damage statute (sec. 1105); the second on the single damage statute (sec. 2867), and the third on the negligence of the defendant's engineer. A verdict was given for the value of the mule on the second paragraph, and in the discussion of the points raised on the appeal we will treat them with reference to that statement of the cause of action. At the place of the accident there was a private switch put in by Scott & Company, to be used in connection with a saw mill they operated there. The mill itself stood partly on the right of way. The switch was between two and three hundred feet long, close to the main line of defendant's railroad and entirely on the right of way. A private crossing, used mostly by Scott & Company in connection with their milling business, but occasionally by others, crossed the main line a hundred feet or more from the north end of the switch. About twelve or thirteen carloads of freight, mostly composed of hickory bolts and other structural timbers, are loaded at the switch every month. The country about is timber land

and the railroad is uninclosed by fences. There is no depot, station, incorporated town or village and no building except the mill near the place. The main point for decision is whether the railroad company was compelled by law to fence its tracks at that place, or whether it was bound to do so only if fences would not endanger crews in the operation of trains or interfere with the transaction of public business. The verdict was given for single damages; but a recovery on the single damage statute was as permissible as one on the double damage statute, if the company was under a statutory obligation to maintain fences where the accident occurred. Radcliffe v. Railroad, 90 Mo. 127, 2 S. W. 277. In a case founded on the statute (section 2867) awarding the value of an animal killed by a railroad train, instead of twice the value, judgment may go for the plaintiff, if the evidence shows the animal went on the track where it was open, and the law either required or permitted a fence there, unless it was left open from the necessities of traffic. The statute requiring railroad companies to fence, reads that they shall erect and maintain fences where their roads pass through, along or adjoining inclosed or cultivated fields or uninclosed lands; and contains other expressions indicating that the Legislature only intended to compel fencing along rural portions of railroad lines. For this reason the statute has been held not to require railroad tracks within the limits of an incorporated town or city to be fenced. Edwards v. Railroad, 66 Mo. 567. No express exemption from the duty to fence everywhere outside of towns is mentioned in the statutes; but exceptions of two kinds have been allowed by the courts. One class is allowed for the welfare of the public; and for this reason railroad companies are not permitted to fence their tracks across public highways or in unincorporated towns, where to do so would obstruct streets and alleys. Gerren case *infra.* The commodious use of streets and highways would be so interfered with where they cross railroad tracks, if the latter

were inclosed either with fences or gates, that to inclose them is forbiden. For the same reason, depots and stations may not be inclosed. Russell v. Railroad, supra. Exceptions of the other class are allowed where there is a reasonable necessity to leave the tracks open to promote the safety of the operatives of trains and the transaction of business with the patrons of the railway company. Gerren v. Railroad, 60 Mo. 405. If an animal goes on a railroad at a place where, according to the decisions, the company either is prohibited from inclosing its track, or allowed to leave it open because of the necessities of traffic, the company is not liable if the animal is killed by a train, for either single or double damages, except on proof that negligence of the company's employees contributed to the accident. There may be portions of the line which the statutes do not require to be fenced, yet where there is no necessity to leave the line open, and if an animal goes on the track and is killed by a train at such a place, the railroad company is liable for its value in an action founded on section 2867; because, though not bound to fence at that place, the company could have done so. The only place of this sort we can call to mind, in view of the decisions on the several statutes regarding the liability of railroad companies for killing stock, is a portion of an incorporated town traversed by a railroad where there are no streets and alleys platted or open. Ray v. Railroad, 84 Mo. 345; Wymore v. Railroad, 79 Mo. 247. It has been decided in one case and intimated in another, that at such places in incorporated towns, the company is bound to fence, for the reason that no streets cross its track. Ells v. Railroad, 48 Mo. 231; Brandenburg v. Railroad, 44 Mo. 224. This notion is erroneous. It arose from thinking railroad companies were excused from fencing in towns only because the use of public streets would be interfered with; whereas, they are excused because the statute requiring them to fence relates to their lines where they run through the country. This was decided

in Edwards v. Railroad, supra, in which the opinion in the Ells case was condemned. It was decided in Boyle v. Railroad, 21 Mo. App. 416, that, as the statutes now read, railroad companies are bound to inclose their tracks at all places outside of towns, except public crossings and depots. This conclusion was based on the fact that the present statute requires railroads to be fenced wherever they run through uninclosed lands; whereas, in the former statute, the requirement was where they ran through uninclosed prairie land. But in Gerren v. Railroad, supra, it was said that even in an unincorporated town, a company was not bound to fence where lands were laid out into streets crossing the track and that it would be unlawful for railroad companies to fence up the streets. We have noticed the several exceptions to the duty to fence, in order to see if the facts of the present case bring it within any of them. As the plaintiff's animal went on the track where there was neither an incorporated or an unincorporated town, nor a station, and nothing but uninclosed timber lands and a saw mill, none of the exceptions thus far mentioned applies. But it is argued that as the Scott switch was used by the owners of the mill, and to some extent by people of the vicinity, it was a question for the jury whether the company was bound to fence there; that is, whether there was a necessity to leave the switch unfenced. At a part of a railroad near a depot where possibly a fence can be erected without inconvenience to the patrons of the company, or danger to railway employees in loading, unloading and shifting cars, it is commonly a question for the jury to determine whether or not the safety of train operatives, or the transaction of business, makes it reasonably necessary to leave the track unfenced. Pearson v. Railroad, 33 Mo. App. 543; Brandenburg v. Id., 44 Mo. App. 224; Downey v. Id., 94 Mo. App. 137, 67 S. W. 945. Yet we think the question of the necessity of leaving the track open, is only for the jury when the part of the track involved is in the neigh-

borhood of a station. If the place is neither the crossing of a highway or street nor a station, but where the surrounding country consists of uninclosed lands, the statute is obligatory that the railroad company shall fence its track. This proposition was determined in Morris v. Railroad, supra, an action founded on the very statute (sec. 2867) on which this plaintiff obtained judgment. The opinion in that case referred to the case of Lloyd v. Railroad, 49 Mo. 199, in which, for the first time, railway companies were excused from inclosing a space around a station sufficient for the commodious transaction of business with the public, and exonerated from liability if an animal which went on the track at such a point was killed without negligence.

In the Morris case the defendant company asked an instruction that it was not liable if the animal killed got on the track at a portion of the railroad included in the switch limits of a station or depot. It was held that this instruction was properly refused, and in making the ruling the court said:

"There is no reason why defendant should not fence its road along each side of the road where it has a switch, as well as at other places. Where a switch extends along the main line for a considerable distance through an open prairie, it is just as necessary and practicable to have the road fenced as upon any other part of the road, and we are not inclined to extend the rule laid down in the case of Lloyd v. Railroad, before referred to, further than the facts of that case will justify, and that is, that the company is not required to fence such grounds as are necessary to remain open for the use of the public and the necessary transaction of business at the depot or station."

The point in judgment in that case was that a railroad company is bound to fence such portions of its track in the vicinity of stations as can be inclosed without detriment to the public or imperilling its employees, and that how much space needs to be left open is a ques-

tion of fact. But the significance of the opinion lies in the statement that a company is not required to fence such grounds as it needs to leave open for the transaction of business *at a station or depot.* (The italics are ours.) The court further remarked that it would not extend the rule declared in the Lloyd case further than the facts of the latter case warranted, namely; that there is no compulsion to fence at a depot such parts of the track as ought to be left.unfenced for the discharge of business.

The question of the exemption of railroad companies, on the score of necessity, from the statutory duty to fence, has come up for consideration in many cases for killing stock, and in every one the ruling was that the company was liable for single damages at least, if the animal entered the track where it was unfenced, unless the point of entry was a public highway or street or where the track ought to be left open for the safe and convenient transaction of business at a station. Bean v. Railroad, 20 Mo. App. 641; Robinson v. Id., 21 Mo. App. 141; Russell v. Id., 26 Mo. App. 368, s. c. 83 Mo. 587; Hohnson v. Id., 27 Mo. App. 379; Chouteau v. Id., 28 Mo. App. 556; Pearson v. Id., 33 Mo. App. 543; Jennings v. Id., 37 Mo. App. 651; Brandenburg v. Id., 44 Mo. App. 224; Straub v. Eddy, 47 Mo. App. 189; Swearingen v. Railroad, 64 Mo. 33; Robinson v. Id., 64 Mo. 412; Railway v. Clark, 121 Mo. 169, 183, 25 S. W. 192, 906; Cox v. Railroad, 128 Mo. 362, 31 S. W. 3. In those cases it was taken for granted that the company's omission to fence the track could be justified only in the instances stated. But as in the cases resembling this one, the animals entered at or near stations, the essential question involved was whether it was necessary to leave the track unfenced at the point of entry, for the convenience of the public and the safety of train operatives in connection with the business of the station. We are pointed to two decisions of this court supposed to war-

rant the ruling that it is a question for a jury whether a railroad company is bound to fence its line at a loading or passing switch, remote from and unconnected with a station. Wright v. Railroad, 56 Mo. App. 367; Schafer v. Id., 65 Mo. App. 201. The Wright action was on the double damage statute. The cattle killed got on the track at a place on the line where there was no station-house or agent, but where passenger trains stopped when flagged and trains passed each other. There was a side track used to enable trains to pass. A public road crossed the main and switch tracks midway between the ends of the switch. The point decided was that as the public road crossed the switch and the railroad company was prohibited from fencing the crossing, this relieved it from obligation to fence any portion of the switch. Intimations were thrown out that the company was relieved from the duty to fence because cattle guards would have been required at the highway crossing and would have endangered train operatives in switching and coupling cars. The opinion said, that treating Cama (the name of the spot) as a switching point merely, the defendant was not bound to fence the switch there. The court undertook to distinguish that case from the Morris case on the ground that the latter was on the statute for single damages. Whether this distinction made any difference in the obligation of the railroad company to fence, and whether it was a valid ground for giving a different decision from the one given in the Morris case, we are not called on to determine at present. The case in hand, like the Morris case, is based on the single damage statute. But in Shafer v. Railroad, supra, dicta were uttered which look like this court was of the opinion that a railroad company is not liable for the value of an animal killed by one of its trains, if the animal entered where the track was uninclosed and there was no station, provided the jury found it was necessary for public convenience or the safety of trainmen, to leave the track open. However, the court thought its decision was opposed to

the decision of the Supreme Court in the Morris case, supra, and, therefore, certified the cause to the Supreme Court. The latter tribunal refused to take cognizance of it on the ground that all the judges of this court had concurred in the opinion, and if they thought their ruling was opposed to the decision in the Morris' case, they did wrong not to follow the latter decision. In disposing of the matter the Supreme Court said the case was certified to get it to recede from the position taken in the Morris case and made the following comments:

"The decision in Morris v. Railroad, 58 Mo. 78, was rendered nearly a quarter of a century ago, and no doubt has ever been entertained prior to this case as to its true meaning. It has been cited and approved by this court as late as the October term, 1893, of this court, in Railroad v. Clark, 121 Mo. 169, and followed in Cox v. Railroad, 128 Mo. 362. The St. Louis Court of Appeals followed and approved it in Robinson v. Railroad, 21 Mo. App. 141, and in Forester v. Railroad, 26 Mo. App. 123. The Kansas City Court of Appeals in Russell v. Railroad, 26 Mo. App. 368, relied upon it as the true construction of section 2611, Revised Statutes 1889, and expressed no doubt of the meaning to be given the language of Judge Vories. The same court again quotes it as controlling authority in Johnson v. Railroad, 27 Mo. App. 279."

Those remarks convey the impression that the Supreme Court approved the opinion in the Morris case in its full scope and accepted as sound the proposition that railroad companies are bound to fence everywhere except in towns, at highway crossings and about "such grounds as are necessary to remain open for the use of the public and the necessary transaction of business" at a station or depot. In the Russell case (26 Mo. App. 368, 375) the Kansas City Court of Appeals quoted the

passage we have quoted from the Morris opinion, with this comment:

"From which it is manifest that such switches must be at or near the depot, and the space to be kept open shall be no more than is necessary for the transaction of business at that depot.

"The switches in the case at bar were not at the depot. They began two hundred yards from it, and extended a quarter of a mile farther, through uninclosed lands; and as such, they come within the very language of the Supreme Court, that it is the duty of the roads to fence them. Even had there been any business necessity for switches, so far as the trade and traffic of Harlem depot was concerned, there is nothing to show why such switches could not have been built on the two hundred yards' space next to the depot. And most certainly there was not the shadow of a pretense that such business required the extension of these switches over the distance of half a mile for the unloading of freights, which was so seldom that defendant's own agents were most indefinite as to when, or how often, they had seen any freight unloaded on this switch. With just as much propriety, in law, might it be said that if these cars had occasionally unloaded freight from Kansas City at these switches, because of the crowded or unfavorable condition and location of the city depot, the switches would have so pertained to its business as to exempt the roads from their obligation to fence; or, that if this switch had been a mile or more long, it would have been within the rule of switch limits for its entire length, regardless of the necessity arising from an accomodation of the business done at the station."

Now it is noteworthy that in the Shafer case the Supreme Court approved the decision of the Kansas City Court of Appeals in the Russell case, which does not differ materially in its facts from the case at bar. In Taylor v. Railroad, 28 Mo. App. 536, it was explicitly decided that switches and side tracks used to stand cars on,

and for switching and the passing of trains, but not in connection with a depot, or in a, town or village, must be fenced. There is reason for allowing railroad companies not to fence such a switching point as the one described in the Shafer case; but the policy of the law is to grant no exemption on the score of convenience and safety in doing business, except about stations and depots. The first decision in the Schafer case was overruled in 76 Mo. App. 131.

In many cases it is held to be a question for the jury whether an unfenced switch is necessary to be left open in connection with the business of a railroad station; but the clear implication from the opinions is that tracks are imperatively required to be fenced wherever a road runs through uninclosed lands, and that loading or passing switches, located away from stations must be inclosed as well as other parts of the road.

Scrutinizing all the facts of the present case we think, as did the Supreme Court in the Russell case, that the contention of the defendant that its track could not be fenced at the point where the animal entered was the merest pretense. There was no station or agent or even a platform at the place; no passengers were received or discharged, freight trains only stopped occasionally to set out or take up a car, not a car of freight a day was shipped out, the mill owners loaded their stuff directly from the mill, which projected on the right of way; so a fence would not have interfered with them, as Scott himself testified; and if the other residents of the vicinity wanted to use the switch, a gate could have been put in for their benefit. The nearest highway crossing was quite a distance from the apex of the switch and the latter could have been enclosed, therefore, without putting in a cattle guard at the crossing. The siding was of ample length to hold the few cars set out there to be loaded and unloaded.

We think the verdict was plainly for the right party and the judgment is affirmed.

All concur.