GEORGE JOHNSON, Respondent, v. CHICAGO, BURLINGTON & KANSAS CITY RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 24, 1887.

1. RAILROADS—OBLIGATION TO FENCE UNDER SECTION 809, REVISED STATUTES.—Under section 809, Revised Statutes (relating to railroads), the company is not required to fence such grounds as are necessary to remain open, for the use of the public, and the necessary transaction of business at the depot, or station; but the space to be kept open shall be no more than is necessary for such purposes; and it is a question of fact, to be ascertained from all the evidence, whether the given point was not only within the claimed station grounds and switch limits, but, also, whether the point was necessary for the transaction of business, and the accommodation of the public.

2. ———— ———— HOW QUESTION OF NECESSITY, ETC., DETERMINED. The determination of this question of necessity and convenience is

not left exclusively to the judgment and discretion of the railroad company, in establishing its station grounds and switch limits. The discretion exercised by it must be a reasonable discretion, subject to contradiction by competent evidence, and to review by the courts.

APPEAL from Linn Circuit Court, HON. G. D. BURGESS, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover double damages for the killing of plaintiff's cow, by one of defendant's locomotives. There is no contention as to the fact of killing, but the controversy is as to the duty of the defendant railroad company to maintain a fence on the sides of its road, where the injury occurred.

The undisputed evidence is that the cow was killed by one of defendant's trains, near the station of Purdin, in Linn county. Purdin is a village of only forty or fifty inhabitants. The railroad runs north and south through this village ; the depot station is situated near the southern limits of the corporation ; the switch limits extend on both sides of the depot ; the cow was killed at a point thirty-seven and one-half feet south of the south switch limits, which is about sixty-five yards south of the depot building, and thirteen feet south of the town limits. There is a cattle-guard one hundred and twenty-nine feet south of the south switch limits. The railroad has a fence on the west side of its track, from said cattle-guard north to the south switch, but has no fence on the east side. This is uninclosed prairie land. A portion of the track, on the north of the depot, is fenced inside of the north switch limit. The cow was killed in the unfenced space between the south switch limit and the cattle-guard.

The plaintiff's evidence tended to show that no sufficient reason existed why defendant should not fence its road on both sides, where this injury occurred ; that

it was not necessary to the transaction of business at said station that this point should be left open, the defendant never having used the track to the cattle-guard on the south, for switching. The entire business of loading and switching cars seems to have been done on the north switch.

The defendant's evidence tended to show that the cattle-guard on the south of the station was established by the railroad company in laying out this station, and that, in the judgment of its experienced agents, it was essential to the safety of its train men to have the cattle-guards established thus far beyond the switch limits, and that the distance to the cattle-guard was not unusual.

On this state of evidence, the court gave the following declarations of law, on behalf of the plaintiff:

"If the jury believe, from the evidence, that plaintiff's heifer got upon the track of defendant, at a point in Benton township, Linn county, Missouri, where the same runs along, through, or adjoining uninclosed lands, and where the same was not inclosed by a lawful fence, and not in an incorporated city, town, or village, and not upon a public or private crossing, and if they further believe, from the evidence, that said animal got upon said track, at said point, and was killed by defendant's train of cars, in consequence of the failure of defendant to erect and maintain a lawful fence inclosing the road of defendant at the point where said animal got upon said track, they will find their verdict in favor of the plaintiff, and assess his damages at such sum as they may believe, from the evidence, he has sustained, not exceeding the sum of twenty-five dollars, provided they believe, from the evidence, that said defendant could have fenced said road at the point where said animal got upon said track, without causing inconvenience, either to the agents, servants, and employes of the defendant, or to those who might have occasion to transact business with said defendant, and that it was necessary for the

defendant, or the public, that said road, at said point, should not be fenced."

"The jury are instructed that, if they find, from the evidence, that the point where the heifer strayed upon the road was within the limits of the grounds used at Purdin for depot purposes, plaintiff cannot recover; but they are further instructed that, in determining whether the point where the heifer strayed upon the road was within the limits of the depot grounds at Purdin, the jury should take into consideration the nature and situation of the place, its distance from the station-house, the relation of the place to its surroundings, and the use made of that part of the road by defendant and the public."

On behalf of the defendant, the court gave the following instructions:

"1. If the jury believe, from the evidence, that the heifer was killed in the open grounds of the defendant, at the defendant's station, and that it was necessary for the transaction of business with the public, and for its convenience, in the reception and discharge of freight and passengers, that such space should be left open, they will find for the defendant."

"2. If, from the evidence, the jury believe that all parts of the defendant's ground, north of the cattle-guard, mentioned by the witnesses, was necessary, and is used by the defendant for switching purposes, and is a part of Purdin station, on its line of railroad, and that plaintiff's cow was struck, at a point north of said cattle-guard, and within switch limits, then defendant is not liable for injury to said cow, under the pleadings in this case, and the jury must find for the defendant."

"3. The court instructs the jury that it is the defendant's duty to furnish its employes a reasonable, safe, and convenient place, and appliances to enable them to perform their duties, as such employes, without exposing said employes to unnecessary hazard of life or limb; and if

the jury believe, from the evidence, that, to place a cat-
tle-guard and fence, any closer to the switch stand, south
of the depot, at Purdin station, than the one described
by the witnesses is placed, would tend to unnecessarily
increase the hazard of life and limb of defendant's em-
ployes, in the necessary discharge of their duties and
work at said station, and in operating its railway, then
the verdict of the jury should be for the defendant."

The court refused other instructions asked by defend-
ant, which are sufficiently noted in the opinion of the
court.

Verdict and judgment for plaintiff, from which de-
fendant has appealed.

H. H. Trimble, B. J. Northcott, and Palmer
Trimble, for the appellant.

I. The convenience of the public, as well as that of
the company, is the reason why the statute, requiring
the defendant to fence its track, should not apply to de-
pot and station grounds, and it would require legislative
action to induce courts to hold otherwise. "What
amount of land may be taken and held for the use of a
railroad company, in the exercise of its franchise, is al-
ways settled when it secures its right of way, and when
it is once acquired, the company may designate and set
apart so much thereof as it may deem necessary and
proper, for depot and station purposes, as the exigencies
of its business may require, at the points where it located
its stations. The territory required for this purpose,
when ascertained and set apart, constitutes what is called
depot and station grounds, and varies in amount, usually,
according to the location and amount of business to be
done, and the necessities and convenience of the public
in doing their business at the station. These grounds
are not required to be fenced by the company, and of
course cannot be made to extend from station to station.
They are usually quite limited in extent, and are in-
tended to furnish sufficient space for construction of side-

tracks, offices, passenger-depots, freight-houses, and other buildings, ways and yards suitable and convenient for the speedy and safe reception and discharge of passengers and freight, and the storage of cars and other property belonging to the company, and persons doing business with the road. The existence, or extent, of these grounds, are not to be determined by the continued, actual use of any part thereof. When station grounds are laid out, their contemplated future use is not unfrequently of more consideration than the actual demands at the time, in determining their shape and extent. When these grounds are appropriated, and set apart by the company, it would be neither safe nor wise to allow their limits to be curtailed or extended by a jury, in a proceeding where they come, collaterally, in question, as in this case, upon the mere showing that any part of the same was not in actual use at any particular time." *McGrath v. Railroad*, 24 N. W. Rep. 854; *Lull v. Railroad*, 28 Mich. 510; *Railroad v. Campbell*, 47 Mich. 265; *Davis v. Railroad*, 26 Iowa, 550; *Rogers v. Railroad*, 26 Ia. 558; *Packard v. Railroad*, 30 Iowa, 474; *Latty v. Railroad*, 38 Iowa, · 250; *Blair v. Railroad*, 20 Wis. 254; *Railroad v. Caldwell*, 9 Ind. 397; *Railroad v. Beatty*, 36 Ind. 15; *Railroad v. Christy*, 43 Ind. 143; *Railroad v. Griffin*, 31 Ill. 303.

II. Appellant's motion for a new trial ought to have been sustained. *Railroad v. Willis*, 93 Ind. 507; 99 Ind. 93, 154; 101 Ind. 199; 98 Ind. 223.

III. Appellant's motion in arrest of judgment ought to have been sustained, because, on the whole record, it appears that the respondent's heifer was killed at a place where appellant could not fence its road, hence the judgment for double damages was erroneous. *Bennet v. Railroad*, 19 Wis. 145; *Goodbar v. Railroad*, 1 West. Rep. 133.

IV. The court below committed error in refusing to give appellant's seventh instruction, or any instruction enunciating the same principle, to-wit: That the rail-

way company has the right to select and lay out its depot grounds, if it exercises the right to do so in a reasonable manner. The respondent's instructions simply authorized the jury (in effect) to select the station grounds, and ignores the right of selection, by the railway company. Same authority as in par. I.

E. W. WILCOX and C. BOARDMAN, for the respondent.

I. The court did not err in giving instructions numbered one and two for respondent. Instruction number one was proper without any proviso, and both were unnecessarily favorable to appellant. *Morris v. Railroad,* 58 Mo. 78; *Lepp v. Railroad,* 87 Mo. 139.

II. The court below did not err in refusing instructions, numbered four, five, six, seven, and eight, asked on behalf of appellant. Appellant's fifth, seventh, and eighth instructions are virtually given in its second and third. Its fourth and sixth instructions virtually assume that the appellant company can fix its own station limits and leave them unfenced, regardless of law. It is insisted that none of the refused instructions are proper, under the decisions of our Supreme Court, above referred to, and that neither *Blair v. Railroad* (20 Wis. 254), *Railroad v. Griffin* (31 Ill. 303), nor the other authorities cited by appellant's counsel, sustain their refused instructions.

III. Appellant's motion for a new trial was properly overruled. The evidence, under the instructions, fully sustains the verdict.

IV. The motion in arrest of judgment was properly overruled. The petition states facts sufficient to constitute a cause of action.

V. The judgment for double damages was not erroneous. *Parish v. Railroad,* 63 Mo. 284.

PHILIPS, P. J.—I. It is urged in argument by appellant's counsel that there was no proof as to the point

where the cow entered upon the railroad track. This objection is not well taken. The track being admittedly unfenced at the point of the injury, without more, the presumption could be indulged that the animal entered on the right of way thereat. *McGee v. Railroad*, 80 Mo. 283 ; *Lepp v. Railroad*, 87 Mo. 139. There was, moreover, direct proof that the cow was struck "at the same place where she got on the track."

II.    Appellant seems to regard the remaining question raised on this appeal as of extreme importance, and we are asked to settle the law as to how far from its stations it may establish its switches and cattle-guards, without liability to damage for failure to inclose the intermediate space with a fence. This court often feels its incompetency to determine, even to its own satisfaction, much less that of the profession, the law of the case in hand. Experience and observation have taught us to avoid discussion, by way of anticipation, of questions possibly to arise in the future, because they may be allied to the case in hand. Such opinions are not always safe guides to the profession and trial courts, and anon the "glittering generality" comes back to plague the author when confronted with its application to the particular facts of the case at bar. There are certain established principles of law applicable to all cases, but the proper application of the rule, in its essence and spirit, to the varying facts and conditions of particular cases is the test of justice and the severe trial of the judge.

If we comprehend aright the position of counsel for appellant, it is this : that the law does not require railroad companies to fence their tracks at the station and within switch limits, and that, as the roads are held liable to their own employes for injuries consequent upon placing the cattle-guards within distance from the depots where the brakemen pass over in making couplings, the company ought to be left free to determine, through its experts, the points where it will establish its switch limits and cattle-guards. It is conceded to defendant that it is

not required to fence its stations and reasonable switch limits. But we cannot concede to it the right to arbitrarily determine for itself the question of the necessity for the space it shall claim for its station grounds and switch limits, and where it shall build cattle-guards. This would be to put the lives and property of the citizens at the discretion of the company's experts, without contradiction or the right of judicial revision.

Our statute (sect. 809) makes it the duty of every railroad company in the state to erect and maintain along the sides of its road a fence where the road runs through or along inclosed or cultivated fields, "or uninclosed lands," etc. The courts, by construction, have excepted from the operation of this statute, as not being within its intendment, the depot grounds and switch limits, but with the express qualification that it is only such grounds as are necessary for the transaction of the company's business, and of the public having business, at such station. Hence it is held that "the company is not required to fence such grounds as are necessary to remain open for the use of the public and the necessary transaction of business at the depot or station." *Morris v. Railroad*, 58 Mo. 78. And as held in *Russell v. Railroad* (26 Mo. App. 375), "the space to be kept open shall be no more than is necessary for the transaction of business at the depot." So in *T. & S. F. R. Co. v. Shaft* (6 Pac. Rep. 908), it is held that, "assuming the land necessarily used for station grounds need not be fenced, still, as the place where the animal was killed was not necessary, in the present case, for the use of the railroad company as a part of its station grounds, the same should have been fenced." See also *Lepp v. Railroad*, 87 Mo., *supra*. From all of which it is manifest that it becomes in every such case a question of fact, to be ascertained from all the evidence, whether the given point was not only within the claimed station grounds and switch limits, but also whether the point was necessary for the company's use in conveniently and safely

transacting its business and the accommodation of the public transacting business at the station. Even if it were competent for the legislature to enact such a law ( and I do not concede that it would be ), it is sufficient here to say that neither has the legislature enacted such a law, nor have the courts held that the determination of this question of necessity and convenience shall rest exclusively in the judgment and discretion of the railroad company in establishing its station grounds and switch limits. It has the right to take land for such purpose and the discretion as to the space at which it will extend its switch limits and build cattle-guards, but it must be a reasonable discretion, subject to contradiction by competent evidence and to review by the courts. While jurors and courts, in passing on such questions, should give due consideration to the superior knowledge and experience of men familiar with such matters, they cannot shut their eyes to obvious facts nor stop their ears to other sources of evidence which, to an intelligent and unbiased mind, should overbalance the opinion of experts.

The instructions given by the court quite fully and fairly, to the defendant, submitted to the jury the question of the necessity of the ground in question for the company's use. There was no pretext that it was essential to the accommodation of the public. There was ample evidence in the case to entitle the plaintiff to the opinion of the jury. The cow was killed thirty-seven and one-half feet outside of the switch limits established by the company and thirteen feet outside of the town limits. There was no evidence to show that defendant had ever had occasion to run over the cattle-guards in switching at this station, or over the point where this injury occurred. On the contrary, the uncontradicted evidence was that the defendant only used the switch grounds north of the depot. The best proof, it occurs to me, of the existence or nonexistence of the necessity claimed by the defendant, was

the use or non-use of the grounds in question. And while, as intimated by one court, the company, in the establishment of their stations and switch limits, ought not to be restricted to the present, immediate use of all the space allotted in their plans, but should be allowed to take into consideration the prospective increase in business at such station, yet we take it that such calculation, based upon future contingency of the development of trade and commerce, should be a reasonable one, and there should be some evidence adduced as to this predicate by the party seeking protection under it. The instructions refused by the court were properly rejected. All there was of virtue in some of them had already been sufficiently expressed in those given, while others contained the vice, covertly, of expressing the idea of the right of defendant to arbitrarily fix the limits of its station grounds.

We discover no error in this record. It follows, the other judges concurring, that the judgment of the circuit court is affirmed.