DUNCAN, Respondent, v. ST. LOUIS, IRON MOUN-
TAIN & SOUTHERN RAILWAY COMPANY,
Appellant.

St. Louis Court of Appeals, February 21, 1905.

1. **RAILROADS: Fences.** Under section 1105 of the Revised Statutes of 1899, railroad companies are bound to erect and maintain fences on both sides of their track at all places not in towns, where it is not necessary to keep the grounds open for the use of the public and for the necessary transaction of business at their depots and stations. (Overruling Wright v. Railroad, 56 Mo. App. 367.)

2. ———: ———: **Ground Open to Public.** Where a switch ran from the main line to a granite quarry and was used for the convenience of the quarry company in loading and unloading the granite, but had never been offered to the general public, it was required to be fenced under that section, although a public road crossed the switch and the track at one point.

Vol 111 app—13

3. ———: ———: Depot.  A point on the railroad, which was not
a regular stopping place for trains for taking on or discharging
either freight or passengers, but where passengers were per-
mitted to get on and off though they could not procure tickets,
was not a station or a depot and was required to be fenced un-
der said section.

Appeal from Wayne Circuit Court.—*Hon. Frank R.
Dearing,* Judge.

AFFIRMED.

*Martin L. Clardy* and *Louis F. Dinning* for appel-
lant.

The court erred in giving instruction numbered 2
for plaintiff.  This instruction is not the law.  It
wholly leaves out a fact which was clearly established
beyond dispute, that the switch or spur in question was
intersected by a public road and public crossing.
Wright v. Railroad, 56 Mo. App. 373.

*Munger & Ward* for respondent.

Where stock is killed on a railroad switch at a
point where it is necessary to keep the road open in or-
der to transact business with the public, and where said
road is not fenced, the company is liable without proof
of negligence.   Lloyd v. Railroad, 49 Mo. 199; Morris
v. Railroad, 58 Mo. 78; Russell v. Railroad, 26 Mo.
App. 368.   It is a question for the court and the jury,
and is not left to the discretion of the railroad company
as to whether a particular place is necessary to remain
open and unfenced for the use of the public and nec-
essary to the transaction of business. Vanderworker v.
Railway, 51 Mo. App. 166; Crenshaw v. Railroad, 54
Mo. App. 233; Straub v. Receiver, 47 Mo. App. 194; Cho-
teau v. Railroad, 28 Mo. App. 556.

Duncan v. Railroad.

STATEMENT.

Two of plaintiff's horses went upon defendant's railroad track where there was no fence and were struck and killed by a passing locomotive and train of cars. One of plaintiff's hogs also went upon the road where there was a defective fence and was struck by a locomotive and train and killed. Plaintiff brought suit under the statute (section 1105, R. S. 1899) to recover the value of the animals thus killed. The petition is in the usual form and is in two counts; the first is to recover the value of the horses and the second is to recover the value of the hog. The second count was confessed on the trial. The defense made on the first count at the trial was that the defendant was not required by law to fence at the place where the horses got on the track.

The evidence shows that there is a granite quarry at Granite Bend, in Mill Spring township, Wayne county (where the horses were killed) near defendant's main track. To facilitate the loading of granite blocks and other granite material taken from the quarry, defendant built a switch track about three hundred yards long on its right of way, running about parallel with the main track and connected with it at the north end of the switch. About forty yards south of the north end of the switch, where it connects with the main line, a public road crosses over both the main and the switch track; south of this crossing for over a hundred yards there is no fence on either side of the tracks; near the main track in this unfenced space is a store, one dwelling house and a postoffice. Trains stop there to take on and deliver United States mail but there is no depot, no station or station agent and passenger tickets are not sold. There is no town, incorporated or unincorporated, and no streets or alleys. The switch, as shown by the evidence, is operated exclusively for the accommodation of the company working the quarry. The railroad com-

pany pushes cars on the switch to be loaded with granite blocks and takes them out after they are loaded by the quarry company. No other use is made of the switch and the use of it has never been offered to the general public. The granite blocks from the quarry are hauled to the switch on wagons and there dropped on the ground and afterwards loaded on the cars. Defendant's evidence shows that if the road was fenced, these wagons could not get to the switch unless gates were provided, and there is some evidence tending to show that if wing fences and cattle guards were put in at the road crossing it would be dangerous to the trainmen of defendant in moving cars on the switch. Plaintiff's evidence tends to show that a fence would not interfere with the use of the switch by the quarry people and that it would be neither dangerous or occasion inconvenience to the trainmen if cattle guards and wing fences were placed at the public road crossing. The horses got on the track south of the public road crossing where there was no fence, one forty and the other eighty yards south of the road crossing. The verdict and judgment were for plaintiff. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. Appellant's counsel strenuously contends that instruction numbered one given for plaintiff is erroneous. It reads as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff, Lee P. Duncan, on or about the first day of November, 1903, was the owner of the two horses described in the first count of plaintiff's petition, and that they went in and upon the track of the defendant's railroad near mile post 140 in Mill Springs township, Wayne county, Missouri, at a place not within an incorporated city, town or village, nor upon any publc crossing, and at a place where said road was not inclosed by a fence, and

that said horses of this plaintiff, Lee P. Duncan, went in and upon said track by reason of failure of defendant to erect and maintain fences on side of said road where the horses entered, that while said horses were on said railroad track they were run upon and against by the cars and engine then being owned, run and operated by the defendant, and were killed, then your verdict will be for the plaintiff on the first count in his petition, and you will assess his damages in a sum not to exceed one hundred and fifty dollars."

The instruction covers the entire case, wholly ignores the defense and is not qualified or explained by any other instruction given in the case, and is inconsistent with the instructions given on the part of defendant, but if it properly declares the law of the case the judgment should not be reversed.

In Lloyd v. Railroad, 49 Mo. 199, it was held that when it was necessary to leave the track and switches open, at a depot or station, to transact its business with the public, the company was not required to fence; and to authorize a recovery for stock killed or injured at such a point, it would be necessary for plaintiff to show actual negligence.

In Morris v. Railroad, 58 Mo. 78, the switch or side track in question was in an open prairie. The court held that there was no reason why the company should not fence along each side of the road, and said: "We are not inclined to extend the rule laid down in Lloyd v. Railroad, supra, further than the facts of that case will justify, and that is, that the company is not required to fence such grounds as are *necessary* to remain open for the use of the public and the necessary transaction of business at a depot or station."

In St. Louis, etc., Railway Co. v. Clark, 121 Mo. l. c. 183, 25 S. W. 192, 906, after referring to the statute requiring railroad companies to erect and maintain fences along each side of their roads, and reviewing its

own decisions construing the statute, the court said: "By this legislation the policy of the law is clearly shown to be that railroad tracks should be inclosed by fences where it can be done without interfering with other public uses."

In Schafer v. Railway, 144 Mo. l. c. 174, 45 S. W. 1075 (certified by this court to the Supreme Court) the court said: "The decision in Morris v. Railroad, 58 Mo. 78, was rendered nearly a quarter of a century ago, and no doubt has ever been entertained prior to this case as to its true meaning. It has been cited and approved by this court as late as the October term, 1893, in Railroad v. Clark, 121 Mo. 169, and followed in Cox v. Railroad, 128 Mo. 362, 31 S. W. 3. The St. Louis Court of Appeals followed and approved it in Robinson v. Railroad, 21 Mo. App. 141, and Forester v. Railroad, 26 Mo. App. 123. The Kansas City Court of Appeals in Russell v. Railroad, 26 Mo. App. 368, relied upon it as the true construction of section 2611, Revised Statutes 1889; and expressed no doubt of the meaning to be given the language of Judge Vories. The same court again quotes it as controlling authority in Johnson v. Railroad, 27 Mo. App. 379." This court ruled in the Schafer case (65 Mo. App. 201) that the statute did not apply to the killing of stock at a switching point, if a perfect inclosure at such point, including necessary cattle guards, would greatly endanger the lives of the railway company's employees while engaged there in switching cars. The switch in question was about one hundred and thirty feet south of the southern limits of an incorporated town. After this case was remanded here by the Supreme Court (144 Mo. 170) this court adopted the ruling of the higher court and in terms overruled its prior decision in the Schafer case (76 Mo. App. 131).

These decisions, we think, overthrow the authority of the case of Wright v. Railroad, 56 Mo. App. 367, relied on by defendant, where it was held by this court

Duncan v. Railroad.

that a railroad company was not bound to fence a switch where the same was not in an incorporated city or town or in a village, nor near a station or depot, but was chiefly in use for passing trains, twenty to forty passing daily, and where it frequently happened that the number of trains meeting at the switch would be. greater than the switch could accommodate and as a result the trains would be obliged to "saw" by each other.    There was a public road crossing about the middle of the switch and the court held that to have fenced the switch and track would have necessitated cattle guards on each side of the public road where it crossed over the track and switch and that these guards would have been so dangerous to the employees in coupling and uncoupling cars on the switch as to have made the switch a death trap if its use for passing trains should be continued. The decision of this court in the case seems to have been compelled by the very necessity of the case. But it engrafted upon the statute an exception not sanctioned by the Supreme Court or by any decision of the Kansas City Court of Appeals, and is opposed by several decisions of this court.    For these reasons we do not feel bound by it or that it is authority for excusing a railroad company from "erecting and maintaining fences on the sides of its road where the same pass through, along or adjoining inclosed or cultivated fields or uninclosed lands," not at a depot or station where it is *necessary* that the track be kept open for the transaction of its business with the public.

We think the authorities cited have established the rule in this State that under the statute, railroad companies are bound to erect and maintain fences on both sides of their tracks at all places not in towns where it is not necessary to keep the grounds open for the use of the public and for the necessary transaction of business at their depots and stations.

The evidence is all one way that the ground on

which the switch was laid is not open for use by the public. Was it at a depot or station?

In Maghee v. Transportation Co., 45 N. Y. 514, it was said that "depot" was generally understood to be a place where a carrier is accustomed to receive merchandise, deposit it, keep it ready for transportation and delivery, and as applied to railroads it is a place where passengers are received and deposited and where freight is deposited for delivery. This definition was approved in State v. Railroad, 37 Conn. 153, and in Plunkett v. Railroad, 79 Wis. 222.

In Hill & Morrison v. Railroad, 75 S. W. (Tex.) 874, a "depot" is defined as "a railroad station." The same ruling was made in Karnes v. Drake, 103 Ky. 134.

In Railroad v. Smith, 71 S. W. (Ark.) 1. c. 248, it is said that a depot may be "a house for the storage of freight and the accommodation of passengers, or it may be a place where railroad trains regularly come and stop for the convenience of passengers and for the purpose of receiving and discharging freight, or may include all of these things. . . . The term 'depot' usually includes not only the idea of a stopping place, but also that of a building, or something of the kind, for the protection and convenience of passengers and freight."

In Mahaska v. Railroad, 28 Iowa 437, it was held that a station at a coal bank where trains merely stopped to take or leave cars for purposes connected with its trade was not a depot, within a contract that defendant was to build but one other depot between two certain fixed points.

In Hurt v. Railway, 39 Minn. 485, it was held that a mere flag station is not a depot, and in Anderson v. Stewart, 76 Wis. 43, a similar ruling was made and it was also held that where a railroad company took up its fences and put in cattle guards at a place where it had maintained a flag station, after the laying out of the town plat, but did not keep any depot, depot master or

clerk, nor sell any tickets to the town, which consisted of two houses and store, but merely took up freight there when flagged, as it did at any point on that portion of its road, it could not escape the liability for horses killed there for want of a fence, on the ground that such place constituted depot grounds.

Webster defines a railroad station to be "a place where railroad trains regularly come to a stand, for the convenience of passengers, taking in fuel, moving freight," etc. Bouvier gives the same definition. 2 Bouvier's Law Dict. (Lawe's ed.), 1031.

Passengers were permitted to get on and off trains at the point in question but could not procure tickets at this point for any station along the road or buy one for this point. Packages of freight were sometimes thrown off there for the accommodation of the consignees but there was no agent to take charge of such freight when thrown off. It was not a regular stopping place for trains for any purpose, especially for taking on and discharging either freight or passengers, and for these reasons it was neither a station or depot; being neither, the company was bound to erect and maintain fences along either side of its railroad track. Its defense, therefore, that fences would interfere with the use of the switch is not available on the facts shown by the record, and the plaintiff's instruction numbered one properly declares the law of the case, wherefore the judgment is affirmed.

All concur.