MYLES DORSEY, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 3, 1913.

1. **RAILROADS: Duty to Fence Right of Way: Station Grounds: Statute.** Sec. 3145, R. S. 1909, as construed by the courts, does not require a railroad company maintaining a station which is not in an incorporated or platted town to inclose its right of way with a fence and to maintain cattle guards within such station grounds and switch limits as are necessary for the transaction of business with the public and for the reasonable safety and convenience of its employees in discharging their duties.

2. ———: ———: ———: ———: **Action for Killing Animal.** In an action against a railroad company, under Sec. 3145, R. S. 1909, for damages resulting from the killing of an animal by an engine at a point within the switch limits of a station

Dorsey v. Railroad.

not within an incorporated or platted town, where it appears that the cattle guard is located at a considerable distance beyond the apex of the switch and that the animal went upon the right of way and was struck by the engine at that point, and that the collision would not have occurred if the right of way had been inclosed by a fence, the question of whether a fence should have been maintained there is usually for the jury, to be considered in its twofold aspect of convenience in the transaction of the business of the railroad company and the safety of its employees.

3. ——:———:———:———. A railroad company may not arbitrarily determine what constitutes reasonable station grounds and switch limits at a station not within an incorporated or platted town, under the exemption from the obligation imposed by Sec. 3145, R. S. 1909, by virtue of which it is not required to inclose its right of way with a fence or maintain cattle guards within such station grounds and switch limits as are necessary for the transaction of its business with the public and for the reasonable safety and convenience of its employees in discharging their duties, but the discretion exercised by the company with respect to such matter is reviewable by the courts.

4. ——:———: *Action for Killing Animal.* In an action against a railroad company, under, Sec. 3145, R. S. 1909, for killing an animal, the question of liability or nonliability of the defendant is determined by reference to the point at which the animal entered upon the right of way and not by reference to the point where the actual killing occurred.

5. ——:———: Action for Killing Animal: Evidence: Presumptions. In an action against a railroad company for damages resulting from the killing of an animal by an engine, where it does not appear at what point the animal went upon the right of way, it will be presumed that it entered at the point where it was killed.

6. ——:———: Station Grounds: Action for Killing Animal: Sufficiency of Evidence. In an action against a railroad company, under Sec. 3145, R. S. 1909, for damages resulting from plaintiff's colt being struck by an engine near a station which was not within an incorporated or platted town, it was shown that defendant's cattle guard and right of way fence began 225 feet from the apex of a switch at the station. Several expert witnesses for defendant testified that it would endanger the lives and limbs of the railroad company's employees engaged in operating trains to place cattle guards any nearer the apex of the switch. One of plaintiff's witnesses, who had had twenty-one years' experience as an operator of railroad trains, testified that 100 feet would have been a sufficient space to leave

unfenced between the apex of the switch and the cattle guard. *Held*, that whether defendant was within the immunity from the obligation imposed by the statute, by virtue of which a railroad company is not required to inclose its right of way with a fence or maintain cattle guards within such station grounds and switch limits as are necessary for the transaction of its business with, the public and for the reasonable safety and convenience of its employees in discharging their duties, was a question for the jury.

7. ———: ———: ———: ———: **Proximate Cause.** In an action against a railroad company, under Sec. 3145, R. S. 1909, for damages resulting from the killing of a colt by an engine near a station not within an incoporated or platted town, it was shown that defendant's cattle guard and right of way fence began 225 feet from the apex of a switch at the station. There was evidence that 100 feet of this space nearest the apex of this switch was all that was necessary to remain open for the transaction of the company's business with the public and for the reasonable safety and convenience of its employees in discharging their duties. Plaintiff's colt was frightened by the engine within the station grounds and ran up the right of way until it got within a few feet of the cattle guard, where it was struck by the engine. *Held*, that notwithstanding the fact that the colt would not have been injured if it had remained within the station grounds, the question of whether defendant's failure to inclose its right of way with a fence to a point within 100 feet from the apex of the switch, as it was its duty to do under this evidence, was the proximate cause of the colt's death, was a question for the jury, since the colt would not have entered upon the track and been killed beyond this point, if such a fence had been maintained.

8. ———: ———: ———: ———: **Instructions: Clerical Error.** In an action against a railroad company, under Sec. 3145, R. S. 1909, for damages resulting from the killing of a colt by an engine near a station not within an incorporated or platted town, an instruction for plaintiff required the jury to find, as the predicate of a recovery by plaintiff, that defendant could have fenced its right of way and maintained a cattle guard at the place where the colt came upon that portion of the track where it was killed, without causing inconvenience to the employees of defendant or to those who might have occasion to transact business with it, and that it failed and omitted to do so, and thus occasioned the collision with the colt, and further required the jury to find that it was not necessary for defendant or the public that the road at that point should be *fenced* or cattle guards be constructed. *Held*, that while the word *unfenced* should have been used in place of the word *fenced*, the error was harmless, in view of the

fact that the instruction, taken as a whole, and considered with the other instructions given, could not have misled the jury by reason of the misuse of the word.

9. **INSTRUCTIONS: Clerical Error.** The error of an instruction arising from the use of a certain word, when another word should have been used, will be deemed harmless, where it is obvious that it could not have misled or confused the jury.

10. ————: **Ambiguous Instruction: Cured by Other Instructions.** The defect in an ambiguous instruction given for the plaintiff is cured, where the other instructions given properly and explicitly inform the jury as to what it is necessary for them to find before they can charge defendant with liability.

Appeal from St. Charles Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*Theodore C. Bruere* for respondent.

As to whether it was necessary or desirable for the protection of the employees of defendant or for the convenient transaction of the business of appellant for the appellant to maintain open and without a cattle-guard the space between the west end or point of the switch and the place where the cattleguard had been taken out was a question for the jury. Brandenburg v. Railroad, 44 Mo. App. 223; Acord v. Railroad, 113 Mo. App. 84; Duncan v. Railroad, 111 Mo. App. 193; Johnson v. Railroad, 27 Mo. App. 379; Russell v. Railroad, 26 Mo. App. 368.

*Brice Edwards* and *Palmer Trimble* for appellant.

(1) Unless the damages complained of are properly attributable to the wrongful act charged, there can be no recovery; or, in other words, the wrongful act complained of must be the proximate cause of the injury. Sira v. Railroad, 115 Mo. 127; Henry v. Railroad, 76 Mo. 288; Logan v. Railroad, 70 S. W. 734; Paquin v. Railroad (Minn.), 108 N. W. 882. (2) It is

the settled law of this State, that it is the place where the animal got on the track, and not where it was in fact killed, that fixes the liability of the railroad company. Cecil v. Railroad, 47 Mo. 246; Nance v. Railroad, 79 Mo. 197; Moore v. Railroad, 81 Mo. 502; Ehert v. Railroad, 20 Mo. App. 251; Accord v. Railroad, 113 Mo. App. 84; Corcoran v. Railroad, 138 Mo. App. 408; Edie & Son v. Railroad, 133 Mo. App. 9; Hurd v. Chappell, 91 Mo. App. 317. (3) A railroad company is not required to fence such ground as is necessary to remain open for the use of the public and the necessary transaction of the business at the depot or station. Nor where such fencing would endanger the lives of its employees in the performance of their duties. Pearson v. Railroad, 33 Mo. App. 543. (4) If the fencing of the railway track, or placing cattle guards at the point where the animal came upon the track, or was killed, would interfere with the transaction of the business of the company, or endanger the lives and safety of its employees and officers in the operation of its trains, then the company would not be required to fence its tracks or place cattle guards at such place. And no liability will attach to a railroad company for failure to put a cattle guard at a place where, to do so, would endanger the lives or limbs of its employees. Redmond v. Railroad, 104 Mo. App. 651; Corcoran v. Railroad, Co., 138 Mo. App. 408; Gilpin v. Railroad, 197 Mo. 319; Edie & Son v. Railroad, 133 Mo. App. 9. (5) Where the animal came upon the track within switch limits, the fact that they were killed beyond such limits, and where the defendant is required to fence, would not render the company liable, unless the petition alleged, and the evidence proved, that the company was negligent in not using reasonable diligence to prevent the injury after it discovered the danger. Redmond v. Railroad, 104 Mo. App. 651; Lloyd v. Railroad, 49 Mo. 199; Edwards v. Railroad, 66 Mo. 567; Morris v. Railroad, 58 Mo. 78; Grant v. Railroad, 56

Mo. App. 65; Hurd v. Chappell, 91 Mo. App. 317; Bumpas v. Railroad, 103 Mo. App. 202; Kirkpatrick v. Railroad, 120 Mo. App. 416; Snider v. Railroad, 73 Mo. 465.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the negligence of defendant in omitting to construct a cattle guard and fences at a point where its railroad passes uninclosed lands. Plaintiff recovered, and defendant prosecutes the appeal.

. The statute (Sec. 3145, R. S. 1909) imposes the obligation on railroad companies to construct and maintain lawful fences along the sides of its railroad where it passes through, along or adjoining inclosed or uninclosed lands, and likewise to construct cattle guards and connect wing fences therewith at certain places contemplated. In event the railroad fails to observe the duty thus enjoined, the owner of stock killed on the road through collision with its trains is given a right of action in double the amount of damages sustained for his loss, provided the loss occurs as a result of the failure to construct and maintain such fences or cattle guards.

It appears plaintiff's colt was run upon and killed by defendant's train, some four or five feet east of the cattle guard, at the station of Orchard Farm. Orchard Farm is a small station on defendant's railroad where considerable business is transacted by it with the public, but the town is unincorporated, and there are no platted or dedicated streets crossing the railroad there. Indeed, the defendant's station grounds and the right of way are immediately adjacent to the south side of the town. The railroad runs east and west, and its cattle guard at the west, near which plaintiff's colt came to its death, is situate 750 feet west of the depot. Besides the depot, defendant maintains on its station grounds a grain elevator, a section house, a corncrib

and a small tool house. The railroad right of way appears to extend about forty-five feet north of the main track, and defendant's station grounds extend 144 feet north of this. However, the station grounds thus mentioned—that is, the parcel of land 144 feet wide owned by defendant on the north side of its right of way—do not extend as far west as the point at which the cattle guard is located. It appears the station grounds—that is, the 144 feet of land owned by defendant adjacent to the right of way—extend but 569 feet west of its depot, while the cattle guard is located 750 feet west of the depot. But the matter of the western limit of the 144 feet of ground frequently referred to in the evidence as "station grounds" is not important, as we view the case, for defendant would undoubtedly be entitled to occupy more than that space if the business of the station and the safety of its employees in transacting it rendered such occupancy necessary.

Plaintiff was engaged in depositing a wagon load of grain in the elevator on defendant's station grounds, and the mare, mother of the colt which was killed, was one of the span hitched to his wagon. During the time the grain was being unloaded, defendant's freight train passed the station to the westward without stopping, and presumably frightened plaintiff's colt, for it ran from the elevator west to a point about five feet east of the cattle guard, where it collided with the train and was killed.

There can be no doubt that the colt was upon defendant's necessary station grounds at the time it started to the westward and that the collision with the train occurred some four or five feet east of the west cattle guard. But, though such be true, the principal question for consideration relates to the necessity of leaving unfenced an extensive portion of the railroad right of way between the apex of the switch and the western cattle guard. It appears that defendant's cattle guard was situate 225 feet west of the apex of its

switch, and all of the right of way and station grounds east of the cattle guards were unfenced to a point where another cattle guard was located beyond and east of the depot.

While the statute requires the railroad right of way to be inclosed with a fence, outside of incorporated and platted towns and at road crossings, at all points where the railroad passes through, along or adjoining inclosed or uninclosed lands, the decisions have established an exemption from its obligation with respect to necessary station grounds and switch limits, where the railroad maintains a station, though not in an incorporated or platted town, as here, for the convenience of itself and the public in the transaction of business. [Lloyd v. Pac. R. Co., 49 Mo. 199; Morris v. St. L., K. C., etc., R. Co., 58 Mo. 78; Acord v. St. Louis & Southwestern R. Co., 113 Mo. App. 84, 87 S. W. 537; Duncan v. St. Louis, I. M. & S. R. Co., 111 Mo. App. 193, 85 S. W. 661.] But the rule touching this matter affords immunity from the obligation imposed by the statute to fence and construct cattle guards only with respect to such station grounds and switch limits as are necessary for the transaction of business with the public and for the reasonable safety and convenience of the railroad employees in discharging their duties. [See Acord v. St. Louis & Southwestern R. Co., 113 Mo. App. 84, 87 S. W. 537; Pearson v. C., B. & K. C. Ry. Co., 33 Mo. App. 543; Morris v. St. L., K. C., etc., R. Co., 58 Mo. 78; Welsh v. Hannibal & St. J. R. Co., 55 Mo. App. 599.] Therefore, a recovery may be had in some cases where the animal is run upon and killed within the switch limits laid out and established by the railroad between the cattle guards at either end, if it appears that such switch limits are unduly extended beyond the reasonable necessities of the case in respect to the transaction of business with the public and the safety of the employees. Such cases usually arise where the animal has come upon the track and met its death

through a collision with the train at the extreme of the switch limits, or between the cattle guard and the apex of the switch. In cases of this character, if it appears that the cattle guard is located at a considerable distance beyond the apex of the switch and the animal suffers death or injury from coming upon the right of way there and a resultant collision, which would not have occurred had the place in question been fenced, the question of the necessity of leaving that portion of the right of way unfenced is usually for the jury, to be considered in its twofold aspect for the convenience of the transaction of business of the railroad and the safety of the employees thereabout. Such were the cases of Morris v. St. L., K. C., etc., R. Co., 58 Mo. 78; Welsh v. Hannibal & St. J. R. Co., 55 Mo. App. 599; Johnson v. C., B. & K. C. R. Co., 27 Mo. App. 379; Acord v. St. L. & S. R. Co., 113 Mo. App. 84, 87 S. W. 537.

In the instant case, plaintiff's colt was upon the necessary station grounds of defendant, near the elevator, at the time it took fright and ran to the westward to within four or five feet of the cattle guard, where the collision occurred with the train, and the case was tried upon the theory that it was a question of fact for the jury to determine as to whether or not the space of 225 feet between the apex of the switch and the cattle guard was necessary station grounds about the switch, within the meaning of the law above adverted to. On the part of plaintiff, the evidence tended to prove that defendant had left open and unfenced more space than was necessary at the station of Orchard Farm, and especially about the switch; while that on the part of defendant tended to prove otherwise. Indeed, several expert witnesses for defendant testified to the effect that it would necessarily endanger the lives and limbs of its employees engaged in operating the trains to remove the cattle guard eastward toward and nearer the apex of the switch. On this evidence it is argued here

that this question is one about which only railroad men may authoritatively speak, and therefore we should declare, as a matter of law, that such space was necessary, and that no liability may be affixed against it on a contrary view. The courts have frequently heretofore declared that the railroad company may not arbitrarily determine this matter for itself, but the question is one on the evidence for the jury. The discretion exercised with respect to it by the railroad is therefore subject to review by the courts. [Johnson v. C., B. & K. C. R. Co., 27 Mo. App. 379; Brandenburg v. St. L. & S. F. R. Co., 44 Mo. App. 224; Pearson v. C., B. & K. C. R. Co., 33 Mo. App. 543; Acord v. St. L. & S. R. Co., 113 Mo. App. 84, 87 S. W. 537.]

One witness for plaintiff, who, it is said, had served in the capacity of railroad brakeman, switchman, and conductor—in all for twenty-one years—gave testimony tending to prove that 100 feet was sufficient space for defendant to occupy and to leave unfenced between the apex of the switch and the cattle guard; whereas it appears 225 feet were utilized by the company and remained open instead. The question touching this pertained alone to the safety of the railroad employees about their work, for such portion of the right of way was only in connection with the switch. The following questions were propounded to the witness, and his answers thereto appear as follow: "Q. Can you tell the jury as to what the proper distance would be to place a cattle guard from the switch, due regard being had for the safety of the employees of the roads in handling trains and handling the switching? . . . A. Well, I should judge 100 feet. Q. You think that would be ample? A. Yes, sir." On this evidence there can be no doubt that the question was one of fact for the jury, and not of law for the court.

It is true there are cases revealing that the courts have accepted the evidence of expert railroad men introduced by the companies as conclusive touching this

question, where such evidence was uncontradicted, and declared, as a matter of law, that no right of recovery appeared, for it was obvious on the evidence that the parcel of land between the apex of the switch and the cattle guard was actually necessary for the use to which it was devoted, and therefore no liability was entailed by failing to fence it. Such is the view expressed on the evidence and the decision given by the Kansas City Court of Appeals in the case of Pearson v. C., B. & K. C. R. Co., 33 Mo. App. 543, and by this court in Grant v. A., T. & S. F. R. Co., 56 Mo. App. 65. However, the expert evidence in those cases was not only uncontradicted, but those judgments were pronounced prior to the ruling of the Supreme Court in Gannon v. Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505, firmly establishing the rule that, though evidence is uncontradicted, the matter of the credibility of the witnesses giving it is always for the jury. It therefore appears that, whatever may be the view of the court reflected in those cases, the question should be regarded as one for the jury in every instance where the plaintiff introduces evidence tending to prove that the space permitted to remain unfenced at such a station is more than is reasonably necessary for the convenience of the railroad and the safety of its employees.

But it is insisted that all of the cases under the statute proceed on the theory that the question of liability or nonliability of the railroad for killing or injuring stock is to be determined by reference to the point at which the animal entered upon the right of way and not where the collision actually occurred. Such is undoubtedly the rule, and in cases where it does not appear where the animal entered, the presumption is, that it entered upon the right of way at the point it was killed. It is urged here that, as plaintiff's colt entered upon defendant's right of way near the grain

elevator and within that portion of its switch limits conceded to be necessary station grounds, no recovery may be had, for the reason that it ran forward to within five feet of the cattle guard, where it came to its death. The case of Edie & Son v. Kansas City Southern R. Co., 133 Mo. App. 9, 112 S W. 993, is relied upon in support of the argument, but we do not understand that authority to sustain the proposition asserted. As we understand that case, the point in decision pertained to the right of recovery for the failure of the railroad to install a cattle guard on the north side of a public road in the very center of its station grounds and within probably fifty or sixty feet of its depot. The court declared, as a conclusion of law, that such station grounds were necessary and that a cattle guard installed at that point would endanger the lives and limbs of those engaged in switching and transacting business for defendant in its station yards. The rule so frequently declared, that the liability or nonliability of the railroad under this statute is to be determined by reference to the point at which the animal entered on the right of way, is to be considered and applied, of course, with respect to the obligation of the railroad to fence at such point. If it be found, as a matter of fact, that the place at which the animal entered upon the right of way is one where the obligation to fence obtained, then, of course, liability is entailed for the failure to erect or maintain the fence or cattle guard required by the statute, provided the animal entered there and met its injury or death through collision with the train; for obviously, in such case, the failure to fence should be regarded in the law as the proximate cause. [See Snider v. St. Louis, I. M., etc., R. Co., 73 Mo. 465.] The question is solely one pertaining to the proximate cause of the damage done. [Kirkpatrick v. Illinois Southern R. Co., 120 Mo. App. 416, 96 S. W. 1036.]

175 Mo. App. 11

It appears defendant left unfenced that portion of its right of way between the cattle guard and the apex of the switch, which in all is 225 feet in length. According to the evidence for plaintiff, 100 feet of this space nearest the switch head was all that was necessary to remain open; therefore 125 feet nearest the cattle guard was unnecessarily permitted to remain unfenced and uninclosed. Obviously, this being true, plaintiff's colt entered upon that portion of the right of way required by the law to be fenced, 120 feet east of the point where it was killed. The collision occurred while the colt was five feet east of the cattle guard, and it had passed the line 120 feet east, where the fence or cattle guard should have been constructed. Such line is to be regarded, for the purposes of the instant case, as the point at which the colt entered upon the right of way, for in no other view could the obligation which the law casts upon defendant be enforced. Indeed, it seems the case of Morris v. St. Louis, K. C., etc., R. Co., 58 Mo. 78, presented a like situation as to facts, and the Supreme Court viewed the matter as one which permitted a recovery on the failure of the railroad to keep its obligation to fence. In that case the defendant's cattle guard, near which the plaintiff's mules were run upon by the train, was about one-fourth mile west of the station. The mules entered upon the railroad right of way "at or near the station," says the court, and ran down the track to where they were injured at the cattle guard. Touching this matter, the facts of that case are similar to this one, and it may therefore be regarded as directly in point. [See, also, Schafer v. St. Louis & H. R. Co., 144 Mo. 170, 45 S. W. 1075.] It is entirely clear that the mere fact the colt first came upon the station grounds at or about the elevator should not preclude a recovery, if defendant was required to fence the right of way 125 feet east of the cattle guard, which the colt entered upon there, and crossed, before the collision occurred, between the cat-

tle guard and the switch head. [Acord v. St. Louis &
Southwestern R. Co., 113 Mo. App. 84, 87 S. W. 537.]

But it is said the fright of the colt, and not the fail-
ure to fence, was the proximate cause of plaintiff's loss.
It is no doubt true that, had the colt remained at the
elevator and not run westward upon the right of way,
the collision would not have occurred. But, be this as
it may, the question concerning it is one to be reckoned
on the probabilities of the case, and therefore within
the province of the jury, for it is certain that, had de-
fendant inclosed its right of way to a point 100 feet
west of the switch head, the colt would not have en-
tered upon the track beyond and come to its death at a
point 220 feet west of the same switch head.

Among other things, plaintiff's first instruction
required the jury to find, as a predicate of liability, that
the defendant could have fenced its road and main-
tained a cattle guard at the place where the colt came
upon that portion of the track where it was killed,
without causing inconvenience, either to the employees
of the defendant or those who might have occasion to
transact business with it, but failed and omitted to do
so and thus occasioned the collision with the colt. Be-
sides this, the instruction concluded by requiring a find-
ing of fact to the effect it was not necessary for the
defendant or the public that the road at that point
should be "fenced" or cattle guards be constructed.
The word "fenced," last above, which we have quoted,
was evidently mischosen for the word "unfenced." It
is manifest from the context that the court intended to
employ the word "unfenced," as it should have done,
instead of the word "fenced." It is suggested that
this was error, and we conceive it to be so, but, in the
circumstances of the case, not prejudicial. The word
"fenced," as used in the context of the instruction, in
connection with the words which precede it, was
obviously misused in the hurry of the trial; but when
the entire instruction is considered on the record, to-

gether with the fact that the only issue pertained to the necessity of fencing or leaving unfenced the portion of the right of way involved, it is clear enough the jury were not misled. The members of the jury must be regarded as men of common sense and understanding, who knew what they were about in finding the fact pertaining to the simple issue in the case. That the jury were neither misled nor confused about this matter by this mischosen word is especially true in view of the plain and pointed instruction given by the court of its own motion touching the matter. By this instruction the jury were informed that, if it was necessary or desirable for the convenience or safety of defendant's employees or the transaction of the business of the defendant to maintain that portion of the right of way open and without a cattle guard or fence, then the finding should be for defendant. When plaintiff's first instruction is considered as a whole and in connection with that given by the court of its own motion, no inconsistency appears, but, on the contrary, the issue is well defined and pointed out. At most, the plaintiff's instruction, standing alone, is slightly ambiguous, but not so when considered in connection with the others; and an instruction which is merely ambiguous is not to be condemned as reversible error, when the partial view it suggests is supplemented by others sufficient, provided the whole, considered together, be consistent and harmonious. [See Gibler v. Terminal R. Ass'n, 203 Mo. 208, 101 S. W. 37, 11 Ann. Cas. 1194.] In such cases, though an instruction for plaintiff may be defective, such defect is cured where other instructions given properly and explicitly inform the jury what it is necessary to find before they can charge the defendant with liability. [See Steele v. Ancient Order of Pyramids, 125 Mo. App. 680, 103 S. W. 108; Batten v. Modern Woodmen of America, 131 Mo. App. 381, 111 S. W. 513; Sizer Forge Co. v. Weber Gas, etc., Co., 135 Mo. App. 86, 115 S. W. 507.]

We discover no reversible error in the instructions given by the court and none in the refusal of those requested by defendant. The issue was fairly presented to the jury by those given.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.