FOSTER, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 18, 1905.

1. **RAILROADS: Fencing Track: Station.** A point on a railroad where a switch is maintained, for the exclusive accommodation of a mill, quarry or mine is not a station, so as to exclude the necessity of fencing the track under section 1105, Revised Statutes of 1899, though trains sometimes stop there to receive and discharge freight and passengers as a matter of special accommodation.

2. **PRACTICE: Judgment for Right Party: Harmless Error.** Where a judgment is for the right party, it will be affirmed no matter what errors were committed at the trial.

Appeal from McDonald Circuit Court.—*Hon. Henry C. Pepper*, Judge.

AFFIRMED.

*Cyrus Crane, O. L. Cravens, O. R. Puckett* for appellant.

(1)   We contend there is no evidence here on which to base the inference that plaintiff's animal got on the track at and by reason of an insufficient cattle guard or a defective fence.   Gordon v. Railroad, 44 Mo. App. 201; Brown v. Railroad, 20 Mo. App. 222; Logan v. Railroad, 96 Mo. App. 461, 70 S. W. 734; Herbert v. Company, 80 S. W. 978; Banks v. Railroad, 40  Mo. App. 458; Walton v. Railroad, 32 Mo. App. 636.   "To make the defendant liable for the killing of the cow, it must be referable to some omission of duty, or, which is the same thing, to the negligence of defendant."   Smith v. Railroad, 47 Mo. App. 546; Clardy v. Railroad, 73 Mo. 576.   (2)   It devolved on the plaintiff to prove by some evidence that the animal got on the track by reason of and through a defective fence or an insufficient cattle guard, and in absence of such evidence the court will reverse the judgment.   Perkins v. Railroad, 103 Mo. 52, 15 S. W. 320.   (3)   The only supposable theory of the fact as to the place of entry on the track by the animal being that it got on within the switch limits of Madge, then the demurrer as to the other count should also have been sustained,   Senate v. Railroad, 41 Mo. App. 295; Wallace v. Railroad, 74 Mo. 594; Caster v. Railroad, 65 Mo. App. 359; Young v. Railroad, 79 Mo. 336.   (4)   The mere fact that the animal was killed at a place on defendant's road where it was enclosed by a lawful fence raises no presumption of negligence, and plaintiff could not recover in such case without proof of actual negligence.   Warren v. Railroad, 56 Mo. App. 367; Webster v. Railroad, 57 Mo. App. 451.

*John B. Christensen* for respondent.

(1)   Outside of incorporated towns and cities, wherever railroad companies may erect fences there they are required to erect and maintain fences, and upon their

failure to do so, are liable for double, not single damages. Bean v. Railroad, 20 Mo. App. 641; McIntosh v. Railroad, 26 Mo. App. 382; Snider v. Railroad, 73 Mo. 465. (2) That law only applies where fences "have once been erected as required by law," and in this case it can not be pretended that the fence erected, by defendant, even before the wires had become loose, and the posts rotted and fallen down, ever did conform to the law. Colyer v. Railway, 93 Mo. App. 152. And as erected, there was and could be no pretense that it was in repair. Rutledge v. Railway, 78 Mo. 293.


STATEMENT.


Respondent's horse got upon appellant's railroad track at or near Madge, in Elk River Township, in McDonald county, and was struck by appellant's engine and train of cars and so badly crippled and injured that it was killed and buried by appellant's section men.

The petition is in two counts: the first is a common law declaration and asks judgment for the actual value of the horse; the second is bottomed on section 1105, of the Railroad Act, R. S. 1899, and prays judgment for double the value of the horse.

The answer (omitting caption) is as follows:

"Comes now the defendant in the above entitled cause and, for its amended answer to plaintiff's petition, denies each and every allegation therein set up and contained, except defendant's incorporation.

"Further answering defendant says that at the place where the plaintiff's horse got on the defendant's track, if it did get on the track, was at a place along defendant's road where by law it was not required to maintain either fences or cattle guards, and was within the switch limits of the depot grounds and switches at Madge, a station of defendant, and that said switches and depot grounds thereat could not be fenced or have cattle guards placed therein without interfering with the usual and

customary business of defendant at said station and without endangering the lives and limbs of its employees; that fencing the same or placing cattle guards therein would cause great inconvenience to defendant in the transaction of its business and to the public and that under the law the defendant was not required to fence its station and depot grounds and switch limits at Madge and provide cattle guards, because the same was at that time crossed by and intersected by a regularly traveled public road."

The verdict was in respondent's favor for one hundred dollars. The court doubled the damages assessed by the jury and rendered judgment for two hundred dollars.

BLAND, P. J. (after stating the facts).—The fact that respondent's horse got upon appellant's right of way and was struck by its locomotive and train and so badly injured that it had to be killed, and was killed and buried by appellant's section men, is not in dispute; nor was the respondent's evidence, that the horse was of the value of one hundred dollars, controverted by appellant on the trial.

The main points relied on by appellant for a reversal of the judgment are: first, there is no substantial evidence showing at what point of appellant's railroad the horse got on the right of way, and second, that while the evidence does not show at what particular point the horse got on the right of way, it all tends to show that it got on at some point within appellant's switch limits at Madge Station, where appellant was not required by law to inclose its tracks by fence. We will take up the second point first, for if it is available as a defense then the respondent was not entitled to recover and the judgment should be reversed. The evidence shows that in the long ago Madge, a city of mythical name, had a depot and post office and some inhabitants, but that many years since the railroad removed the depot, the post mas-

ter moved away and took the post office with him or turned it back to the government, the inhabitants arose, took up their belongings, moved away and have not returned; and that the dark arms of the wilderness have encircled her and the hoot of the owl is heard at night in her precincts; that even the site from which she reared her mythical head would have been lost to future generations had not the railroad company marked it by an enduring monument of *creek gravel*, one hundred and forty-four inches long, forty-eight inches wide and twelve inches in thickness, planted near its track. This monument of stone serves the double purpose of marking Madge Station and of furnishing a standing block on which the would-be passenger may mount and with a red flag in his hand cause a train to stop long enough for him to get aboard; here also freight trains will drop off such packages as are consigned to that point. But the evidence also shows there are two rock quarries, one on either side of the railroad, not a great distance from the Madge monument; that the appellant has built switches to these quarries, over which it pushes cars into the quarries to be loaded with stone whenever required. The road runs north and south at Madge and is fenced south to within forty or fifty feet of the gravel bed station. What appellant calls its switch limits extend from the station from one and one-half to three-fourths of a mile north. The switch on the east side of the railroad leaves the main track not far from the center of the switch limits and crosses a public road running parallel to the main track at this point. This public road crosses the main track south of the station and also the switch on the west side of the track. Within the switch limits, there is a private crossing over the main track. On account of these road crossings, appellant's evidence tends to show that a fence within its switch limits would not only be a great inconvenience to the operation of trains over the switches, but that cattle guards would have to be put in if fences were built which would make the use of the

switches hazardous to the life and limb of the employees handling trains and cars on the switches.

Respondent's evidence tends to show that the necessary gates and fences along the track at these points would be neither inconvenient nor dangerous to appellant's employees. The facts in the case, in respect to the situation and surroundings of the so-called switch limits, are not distinguishable from the facts in the case of Duncan v. Railroad, decided by this court and reported in 85 S. W. 661, 111 Mo. App. 193, where it was held:

"Where a switch track ran from the main track of a railroad to a stone quarry, for the sole convenience of the quarry, and the use of the tracks had never been offered to the general public, the tracks at that point were required to be fenced under Rev. St. 1899, section 1105, requiring the fencing of tracks passing through or along enclosed fields or uninclosed lands." The same conclusion, or substantially the same, was arrived at in the still later case of Smith v. Railroad, 85 S. W. 972, 111 Mo. App. 410.

We do not wish to be understood as holding that a depot building or the presence of a station agent is indispensable to constitute a place a station; but we do not think that a point where a switch is maintained for the exclusive accommodation of a mill, rock quarry or mine is a station, although trains do sometimes stop at such point to receive or discharge passengers or freight as a matter of special accommodation. The switches at Madge were for the accommodation of the rock quarries; they were not there for the transaction of business with the public and the gravel platform was scarcely used at all by the public and we think the evidence falls very far short of showing that it was a station.

In regard to the first point, the evidence is that the land east of the railroad at Madge is open woods and that cattle and horses running at large graze in these woods; that some years ago appellant built a post and wire fence on the east side of the road to what appellant

calls its depot grounds, which were then left open and have ever since remained open. The respondent's horse was killed near the station. The evidence is the posts of the fence were set sixteen feet apart and, at the time the horse was killed and for a month or more prior thereto, this part of the fence was in bad condition; that at two places the post had rotted off at the ground, some of the wires were loose and the fence swung inward, the wires being down so that horses and cattle could easily go over the fence. There never was any railroad fence on the west side of the track, most of the land on that side of the road, however, was in cultivation and inclosed by farm fences. The horse was struck near the south end of the switch limits. There is no direct evidence as to where it got on the right of way. One of the witnesses testified that he traced fresh horse tracks on the railroad track from the private crossing south to where the horse was found, but did not look for tracks north of the crossing. Appellant's theory is that the horse got on the right of way within the switch limits. We think this theory is supported by the evidence, in fact, no other plausible theory is deducible from the evidence. Adopting this theory as the correct one, the result that the appellant is liable for double the value of the horse, under section 1105, supra, is irresistible, and hence it matters not what error was committed on the trial, the judgment is for the right party and it is our duty to affirm it on the conceded facts.

The judgment is affirmed. All concur.