WELCH, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 28, 1908.

1. **RAILROADS: Fencing Right of Way: Depots.** It is not neces-
sary that a railroad company should maintain a depot building
or a station agent at a station on its railroad in order to con-
stitute such place a depot, within the meaning of section 1105,
Revised Statutes 1899, where the company was not required to
fence its right of way.

2. ——: ——: ——: **Jury Question.** Where a place on a
railroad was designated as a flag station and no regular trains
were stopped there for either freight or passengers, no tick-
ets sold and no station house or platform maintained, where
freight was occasionally received but billed to a neighboring
station and the main freight handled was lumber manufactured
by a mill at that point, whether such place was a depot and the
grounds kept open and the switch maintained for the purpose of
accommodating any shipper who might offer freight for ship-
ment, and whether the grounds at that place could not be
fenced without endangering the employees in handling and
switching trains, were questions properly submitted to the
jury in an action against the railroad company for damages,
for killing stock at that point.

Appeal from New Madrid Circuit Court.—*Hon. Henry
C. Riley,* Judge.

REVERSED AND REMANDED.

*L. F. Parker, W. F. Evans* and *Moses Whybark* for
appellant.

(1) Plaintiff's second instruction is wrong, as it
told the jury that if they found from the evidence that
the defendant maintained no depot or agent at Delisle,
then it was not a station. Such is not the law. It is not
necessary to constitute a place a station that a depot
building should be erected, or "that a station agent
should be kept present. Foster v. Railroad, 112 Mo.

App. 72; Smith v. Railroad, 111 Mo. App. 410; Acord v. Railroad, 113 Mo. App. 101. (2) DeLisle was on the time card as a flag station, and trains stopped there regularly on signals to receive and discharge passengers and freight; not for the accommodation of a few individuals, but for the public—whether the business was great or small, the company was ready at all times to take care of it for any and everybody seeing fit to do business at that point. This was sufficient to constitute it a station, and it was not necessary to maintain a depot building or an agent at the place—passengers from all points, whose destination was DeLisle were let off there, and *vice versa,* and the same with freight. McGuire v. Railroad, 113 Mo. App. 79; Wilmot v. Railroad, 7 L. R. A. (N. S.) 207, note "C." (3) The cases holding certain points not to be stations were based on facts different from the case at bar. Moore v. Railroad, 92 S. W. 756; Duncan v. Railroad, 111 Mo. App. 193.

*J. V. Conran* for respondent.

BLAND, P. J.—On the night of September 15, 1906, two of plaintiff's mares and the colt of one of them went upon defendant's railroad track at DeLisle, in Pemiscot county, and were run upon by one of defendant's locomotives and a train. One mare and the colt were killed and the other mare badly injured, hence this action, brought on the double damage act. By the verdict, plaintiff's damages were assessed at $210, which the court, on plaintiff's motion, doubled and rendered judgment for $420. Defendant appealed.

The court gave the following instruction for plaintiff:

"2. The court instructs the jury that if they believe and find from the evidence that the point on de-

fendant's road where plaintiff's animals entered and were killed and injured was not a regular stopping place for taking on or discharging either freight or passengers, and if they find from the evidence that defendant maintained no depot, or agent, at said point, then said place was not a station, and that if they further find that defendant could have erected and maintained lawful fences along the sides of its said road at said point, together with cattle-guards sufficient to keep stock from entering upon the road, without inconveniencing or endangering defendant's employees in moving cars on said switch, then your finding should be for the plaintiff."

The following instruction, asked by defendant, was refused:

"2.   The court instructs you that under the evidence DeLisle is a station on defendant's railroad, and under the law it should leave unfenced such portion of its track and spurs and switches thereat as are necessary for the transaction of its business at the said station, or for the convenience of the public in the transaction of its business there, or for the safety of the men engaged in operating trains; and if you find that plaintiff's animals entered on defendant's right of way at the said station, and within such parts thereof as were necessary for defendant to leave unfenced, for the purposes aforesaid, and it did leave the same unfenced, and after so entering they escaped by fright, or otherwise, over a trestle used by defendant for the purpose of a trestle and cattle guard, and that said trestle was ordinarily sufficient to prevent horses, cattle, mules and other animals from going over the same, and after crossing said trestle they came upon a part of defendant's road, where it passed through inclosed or uninclosed lands, and not fenced, and not within the limits of any city, town or village, or switch limits, and not at a public crossing, and were, after coming on the railroad of defendant at

that point, struck by defendant's train, and killed or injured, then and in that case you will find the issues for the defendant."

The giving of the one instruction and the refusal of the other are the only errors assigned. The propriety of this action of the court must be determined by ascertaining whether or not DeLisle is a station on defendant's railroad. The evidence shows there is no station house, no platform and no station agent at that point; it further shows that it is not a regular stopping place for either freight or passenger trains; no tickets are sold there to any point on defendant's road nor at any station on the road to that point. It is noted on defendant's time table as a flag station and its passenger trains, when flagged, stop to receive passengers, and also stop to discharge passengers whose destination is DeLisle. The railroad runs about north and south; on the east side of the railroad is a large sawmill. A short distance north of the mill is an eight foot wagon road, running east and west and crossing the railroad. This road leads to the Portageville and Caruthersville public road, about a quarter of a mile west of the railroad. This eight foot road is mostly used to haul logs to the mill. The people living east of the railroad also use it to reach DeLisle and the Portageville and Caruthersville road. Several hundred feet south of the mill is a cattle-guard, and seven or eight hundred feet north of the mill is a trestle, fourteen and one-half feet long, nine feet wide and from three to four feet deep. This trestle also serves as a cattle-guard. The space between the two cattle-guards is open. On the east side of the road this space is occupied by a side track or switch and a tram way, the mill and the mill yard. The open space west of the road is also used as a mill yard, principally for the storage of saw logs. A switch or spur track runs from the north up near the mill and is used to set cars on to

be loaded with lumber from the mill. The tramway is the mill company's property and extends from the mill north and nearly parallel with the railroad, running some distance beyond the trestle. The evidence shows that freight in carload lots is received at DeLisle, but it does not show that any one except the mill company ever shipped or received a carload of freight at the place. Martin, a section foreman for defendant, testified that shipments were not confined to the mill company but that any one could ship to or from that point who desired to do so, and that he had shipped groceries and "such like" from Portageville to DeLisle. Plaintiff's witness Brown testified that the railroad company handled freight in carload lots in and out of DeLisle and he supposed it would handle freight for any one who wanted to load or unload at that point. Another witness for plaintiff (Robb) testified that he had seen Cunningham take ceiling off a car at DeLisle. The evidence shows that freight received at DeLisle was billed either to Portageville or Hayti, nearby stations, one north, the other south of DeLisle. We infer from the evidence that the country about DeLisle is sparsely settled and but little freight, except lumber, is offered for shipment or is delivered there. But we think the evidence tends to show that the company has manifested its purpose to accommodate the general public by receiving and discharging passengers and also by receiving and discharging freight at DeLisle, though it has no depot building or freight agent at that point. Yet it seems that the grounds called depot grounds are mostly used as a mill yard.

By section 1105, Mo. Ann. St., 1906, on which the action is bottomed, a railroad company is required to fence its tracks everywhere outside of towns and cities except at public road crossings and depot or switch grounds. [Railway v. Clark, 121 Mo. 169, 25 S. W. 192, 906; Hamilton v. Railway Co., 87 Mo. 85; Boyle v.

Railroad, 21 Mo. App. 416.] The grounds between the cattle-guard south of the mill and the trestle north of it are or are not depot grounds. The court submitted this issue to the jury by instruction numbered 2, supra, which we think is erroneous, in this, that it, in substance, defines a depot as a place where trains regularly stop for taking on or discharging either freight or passengers, or where the company maintains a depot or agent. The maintenance of neither a depot building or agent is indispensable to a depot. [Foster v. Railroad, 112 Mo. App. 67, 87 S. W. 57; Acord v. Railroad, 113 Mo. App. l. c. 101, 87 S. W. 537.]

The evidence tends to show that very little freight, if any, is shipped from DeLisle, except the lumber shipped by the mill company, and that precious little freight is received there by persons other than the mill people and employees of defendant company. Still the case is not on all-fours with the case of Duncan v. Railroad, 111 Mo. App. 193, 85 S. W. 90, where a switch was maintained for the sole accommodation of a granite quarry, small packages of freight being occasionally thrown off for the accommodation of people living in the neighborhood. If defendant company, as we think the evidence tends to show, kept the grounds open and maintained its switch for the purpose of accommodating any shipper who might offer freight for shipment and stopped trains whenever necessary to receive or discharge passengers, and if the open grounds could not be fenced without endangering the life or limb of the employees of the company in handling and switching trains within the open grounds, then we think the railroad company was not bound to fence the grounds. These are questions which should be submitted to the jury under appropriate instructions. That this may be done, the judgment is reversed and the cause remanded. All concur.