ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1911.

(Continued from Volume 160)

JOHN HAY, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

**Springfield Court of Appeals, January 8, 1912.**

1. **RAILROADS: Killing Stock: Double Damages: Failure to Fence within Switch Limits.** In an action against a railroad company under the double damage statute for killing a horse on account of failure of defendant to fence its track, the evidence is examined and *held* to show that the animal was upon the track at a point within the switch limits of a station and where the business of the company with the public required that the tracks be left unfenced and that plaintiff was not entitled to recover under the double damage statute.

2. ———: ———: ———: **Failure to Fence at Station.** The fact that a railroad may not have a depot building or maintain an agent at a place where it receives and discharges passengers and freight, does not necessarily deprive it of the right to leave a convenient portion of its track unfenced where it is necessary for the public to have easy access to its tracks in order to transact business with it.

3. ———: ———: ———: **Failure to Fence.** The test of liability or non-liability for failure of a railroad to fence its track is the necessity for an open track in order to accommodate the public and secure the safety of the employees of the railroad.

161 App.] (1)

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED.

*W. F. Evans, W. J. Orr* and *J. H. Orr* for appellant.

(1) The court erred in refusing to declare the law as asked by defendant at the close of all testimony by way of demurrer thereto. Gilpin v. Railroad, 197 Mo. 319; Pearson v. Railroad, 33 Mo. App. 543; Jennings v. Railroad, 37 Mo. App. 651; Crenshaw v. Railroad, 54 Mo. App. 233; Webster v. Railroad, 57 Mo. App. 451; Grant v. Railroad, 56 Mo. App. 65; Ellis v. Railroad, 89 Mo. App. 241; Duncan v. Railroad, 111 Mo. App. 193; Smith v. Railroad, 111 Mo. App. 410; Foster v. Railroad, 112 Mo. App. 67; McGuire v Railroad, 113 Mo. App. 79; Accord v. Railroad, 131 Mo. App. 464; Bridges v. Railroad, 132 Mo. App. 576; Edie & Son v. Railroad, 133 Mo. App. 9; Corcoran v. Railroad, 138 Mo. App. 408; Green v. Railroad, 142 Mo. App. 67. (2) The open space between the switches was generally used by the public in loading cars and in piling such commodities as ties, lumber, logs, etc., and the space outside of the switches was no more than necessary to insure the safety of employees. Ellis v. Railroad, 89 Mo. App. 241; Hurd v. Chappell, 91 Mo. App. 317; Gilpin v. Railroad, 197 Mo. App. 319. (3) Sawyer Station was not a passing track but a place where the undisputed evidence shows cars were switched in to be loaded and switched out after being loaded. All of the business was connected with that station. Lloyd v. Railroad, 49 Mo. 199; Swearingen v. Railroad, 64 Mo. 73; Ellis v. Railroad, 89 Mo. App. 241; Hurd v. Chappell, 91 Mo. App. 317; Glasscock v. Railroad, 82 Mo. App. 146; Gilpin v. Railroad, 197 Mo. 319. (4) There is no principle of law better settled by

the decisions of the appellate courts of this state than that the giving of an instruction which authorizes a verdict for the plaintiff and ignores any defense set up by the defendant and in support of which there is any substantial evidence, constitutes reversible error. Stanfield v. Association, 53 Mo. App. 595; Laughlin v. Gerardi, 67 Mo. App. 372; Cameron v. Hart, 57 Mo. App. 142; Hollada-Klotz Co. v. Tie Co., 87 Mo. App. 167; Galbreath v. Carnes, 91 Mo. App. 512; Ormsby v. Ins. Co., 98 Mo. App. 371; Morris v. Railroad, 99 Mo. App. 455.

*L. M. Henson* for respondent.

The question as to whether it was necessary to leave the right of way unenclosed at the point where the mare came on the track was a question of fact for the jury to determine under the evidence. Green v. Railroad, 142 Mo. App. 67; Pearson v. Railroad, 33 Mo. App. 543; Smith v. Railroad, 111 Mo. App. 410; Acord v. Railroad, 113 Mo. App. 84; Eaton v. Railroad, 119 Mo. App. 640. (2) Instruction No. 1 given at the request of plaintiff, properly declared the law and was not bound to cover defendant's theory of the case. Duncan v. Railroad, 111 Mo. App. 193. (3) The instructions given on behalf of defendant thoroughly cover its theory of the case and the jury passed on all the issues. Jennings v. Railroad, 37 Mo. 651; Ellis v. Railroad, 89 Mo. App. 241. (4) A railroad corporation is required to fence its right of way where a switch or side track is maintained almost exclusively for one man. Foster v. Railroad, 112 Mo. App. 67; Duncan v. Railroad, 111 Mo. App. 193; Smith v. Railroad, 111 Mo. App. 410. (5) The fact that logs and ties were piled on the right of way to be loaded is no excuse for not fencing the right of way. Little v. Railroad, 139 Mo. App. 50.

COX, J.—Action for double damages for injury to a horse struck by a train on defendant's road. The action is based on defendant's failure to fence its track. Verdict for plaintiff for $75 which was doubled by the court and judgment entered for $150 and defendant has appealed.

The accident occurred at what defendant designated as the station of Sawyer in Butler county. The defendant admits the injury but contends that it is not liable under the double damage statute because under the facts it was not required to fence its road at the place of the accident. The evidence shows that the animal came upon the track within the switch limits at Sawyer and about midway between the two ends of the switch. The track at this place runs from northeast to southwest but for convenience we shall designate it as running north and south. Just south of the south end of the switch a public road crosses the railroad track and there is a cattle-guard on the south side of this crossing and the railroad is fenced south of that point. The switch extends from the public road north to a trestle which is used in lieu of a cattle-guard and the railroad is fenced north of that point. The length of the switch is not definitely fixed. The plaintiff testified that it was a 100 yards or more long, also that it would hold about twelve cars. From this it was probably 300 to 400 feet long. The switch was on the west side of the main track and west of the switch track Mr. Sawyer had a store, a small sawmill and a small factory where grain doors were made. Ties and logs were piled along near the track on this side also to be loaded on cars. Back of the buildings on the west side was Mr. Sawyer's dwelling. On the east side of the track were six small dwellings but part of them were vacant. There had been a postoffice at the place but it was removed near the time of the accident, but whether before or after it, is not clear. There was no depot building and no agent maintained

there, but running from the store to the switch track was a platform and at and opposite this point passengers were received and discharged and freight loaded and unloaded. From the sawmill to the track was a dock from which lumber sawed at the sawmill was loaded on cars to be shipped. The station was a flag station only and passenger trains only stopped when necessary to take on or discharge passengers. The business of the railroad with the public at this point was small in the ordinary passenger and freight business but it was constant and all freight and passengers that were presented for transportation were received. The principal business of the place was the handling of the products of the sawmill and grain door factory of Mr. Sawyer and ties and logs for other people. Ties and logs were piled along the switch, and sometimes on the other side of the main track, to be loaded on cars and the switch track was used for this purpose for its entire length, and one or two cars of freight were shipped from this place each week. The horse came on the main track from the east somewhere near midway between the two ends of the switch and was struck by a passenger train and severely injured.

The facts above narrated were all shown by plaintiff's witnesses and were not contradicted so they may be said to be conceded. Do they show that defendant was not required to fence at the point of the injury? A railroad in the transaction of its business as common carrier must of necessity have stations, depots, depot grounds, and switches, and, as far as is necessary to conveniently transact its business with the public, must be permitted to leave its tracks unfenced at such points. The fact that a railroad may not have a depot building or maintain an agent at a point where it receives and discharges passengers and freight does not necessarily deprive it of the right to leave a convenient portion of its track unfenced where it is necessary for the public to have easy access to its tracks in order to

transact business with it. [Foster v. Railroad, 112 Mo. App. 67, 87 S. W. 57; McGuire v. Railroad, 113 Mo. App. 79, 87 S. W. 564; Acord v. Railroad, 113 Mo. App. 84, 87 S. W. 537; Welch v. Railroad, 131 Mo. App. 464, 109 S. W. 1074.]

The test of liability or non-liability for failure to fence is the necessity for an open track in order to accomodate the public and secure the safety of the employees of the railroad. The amount of business done at a given point is not controlling, but if there is a constant demand for access to the track by the public, or if the company may reasonably expect that the public may at any time need access to its track in order to take passage upon its trains or disembark therefrom or place freight there for shipment or to receive freight shipped to that point, then the carrier not only has the right but it is its duty to leave unfenced whatever length of track shall be reasonably necessary for the accommodation of the public and to insure the safety of its employees in switching and in handling the business at that point. The extent of the length of track that may be left unfenced will depend upon the amount and nature of the business to be transacted there with the public. [Ellis v. Railroad, 89 Mo. App. 241; Smith v. Railroad, 111 Mo. App. 410, 85 S. W. 972; Acord v. Railroad, 113 Mo. App. 84, 103, 87 S. W. 537; Eaton v. Railroad, 119 Mo. App. 640, 95 S. W. 271.]

In determining the length of track that may be left unfenced, the necessities of the business of the carrier with the public alone and the safety of its employees in transacting that business should be considered. The carrier cannot leave a track unfenced for the accommodation of one man or a few men or any number of men less than the general public; neither can it do it for the accommodation of its own business which is disconnected with its business with the public at the place in question. [Green v. Railroad, 142 Mo. App. 67, 125 S. W. 865.]

The switch in question in this case was not a long one and at one end reached to a public highway which the defendant was not permitted to fence. The switch was used chiefly for the purpose of setting cars thereon to be loaded with ties and logs and these ties and logs were hauled in from the surrounding country with teams and piled on the ground beside this switch track to be loaded and the ground beside the switch track was used in this way for the entire length of this track. These ties and logs were hauled there by any one who wished to engage in that business and the use of the right of way and tracks was open for everybody. The defendant received and cared for all business offered it at that point both passenger and freight and there were one or two car loads of freight shipped from this point every week, some other freight handled, and some passenger traffic. The amount of ties and logs shipped from this point makes it certain that teams were almost constantly engaged in hauling from the timber and unloading beside this track and it would have been exceedingly inconvenient for them had they been required to open gates to reach the track and it would have been practically impossible to have maintained a fence and kept the gates closed. It is clear to us that the defendant under these circumstances should be permitted to leave some track unfenced and there is no evidence tending to show that the track left unfenced by it was any more than was reasonably necessary for the accommodation of the public with whom it did business at that point. The result is that defendant is not liable in this case under the double damage statute for failure to fence, but if liable at all, it is for negligently striking the horse. Judgment reversed. All concur.